[Civ. No. 2556. First Appellate District.—November 13, 1918.]

## ROSE B. JOHNS, Respondent, v. CHAUNCEY P. POND, Appellant.

PHYSICIANS AND SURGEONS—MALPRACTICE, ACTION FOR—EVIDENCE.—In this action against a physician for malpractice in unnecessarily performing an operation, the evidence is held sufficient to sustain a verdict for defendant.

ID.—APPEAL—DENIAL OF NONSUIT—HARMLESS ERROR.—Where in such action a motion for a nonsuit was made at the close of plaintiff's case in chief, on the ground of the absence of evidence of negligence in diagnosing the plaintiff's symptoms as showing a tumor, when the plaintiff was in fact at the time pregnant, the error, if any, was rendered harmless by the introduction of evidence later supplying the defect, it not appearing that the defendant was prejudiced in presenting his defense by the fact that the testimony was produced

later in the trial instead of during the presentation of plaintiff's case in chief.

Id.—Instructions.—In such action, an instruction to the effect that if there is more than one method of treatment recognized by the medical profession, a physician may adopt either, was proper, in view of other instructions to the effect that if the physician applied reasonable skill and judgment with ordinary care, he was not liable for damages consequent upon an honest mistake or error in judgment.

Id.—Withdrawal of Evidence from Consideration—Presumption.— An appellate tribunal is bound to presume that the jury followed an instruction withdrawing evidence from consideration.

APPEAL from a judgment of the Superior Court of Alameda County.  W. M. Conley, Judge Presiding.

The facts are stated in the opinion of the court.

William P. Hubbard, and D. C. Dutton, for Appellant.

Ostrander, Clark & Carey, for Respondent.

THE COURT.—This is an appeal from a judgment, taken within sixty days after the entry thereof, in an action wherein the plaintiff sought damages against the defendant, a physician, for negligently, and without occasion therefor, performing upon her a surgical operation.

The plaintiff alleges in her complaint that the defendant informed her that she had a fallopian tumor, and operated upon her for its removal, when in fact the symptoms diagnosed as indicating the presence of a tumor were caused by pregnancy; and that five months later she gave birth to a baby boy weighing nine and one-half pounds. . As a result of the operation plaintiff alleges that her health has been permanently injured, and that she has suffered, and will continue to suffer, more or less pain in body and mind.  Upon these facts she bases her demand for damages, placing the amount at twenty-five thousand dollars.

The plaintiff was a witness in her own behalf, and we may paraphrase her testimony as follows: "I shall have been married four years in January, 1916, and have since my marriage lived with my husband.  The defendant attended me during pregnancy and at the time of the birth of my first child

in the month of January, 1914. Until just prior to the twenty-third day of December, 1914, I enjoyed good health. On that day I telephoned to the defendant to call on me, and when he came I told him that I had been having severe pains in my back and head and also in the pelvic region. I also informed the defendant that I had been examined by Dr. Somers of San Francisco, who said at the time of the examination that he thought I was pregnant five or six weeks. I further told him that I was having a scanty menstruation for almost a day each month. The defendant at that time in my home made what he called a bi-manual examination, and concluded that perhaps my uterus had not contracted after my first child was born, but in any event he assured me that I was not pregnant, saying, 'You are no more pregnant than I am.' At that time he gave me a prescription which I was to use four or five days, and if it gave me no relief I was to let him know. A week or ten days later I called up the defendant and told him that the douche he had prescribed had given me no relief and that my suffering had in fact increased. He told me to call at his office the following day, which I did, and there, after making a more careful examination, he asked me my age. I told him I was twenty-two years old, whereupon he said, 'Mrs. Johns, you are a very young woman, but I want to tell you that you have a fallopian tumor that is growing over the mouth of the uterus,' and that I would have to be operated upon at once; that as soon as the tumor should be removed I would be an entirely different woman. I consented to the operation. It was performed. A few days thereafter the defendant said I was in false labor pains. I had bearing-down pains in the pelvic region. These pains grew worse and the defendant was sent for. When he called the nurse in attendance she told him that she thought I was going to miscarry. He made no reply but ordered some pills, and left word for them to be given to me as directed. He also ordered hypodermics, which were given to me often during the night, but I suffered intense pain and got no sleep until about 4 o'clock in the morning. In the morning about 9 o'clock the defendant informed me that I was trying to miscarry, that I was pregnant and about to feel life. I asked him why he had not performed an abortion, and told him that he had left me in such a condition that my child would be an idiot or deformed. He replied

that he could not perform an abortion for it was against the law, and that he thought the operation would have no effect on the child. From that time I worried constantly about the effect the operation would have on the child. Two weeks after the operation defendant took me home from the hospital and carried me up the front stairs to my room. All this time I suffered intense pain, and the defendant told me he expected I would miscarry within nine or ten days. That was the last time he called. He rendered me no further assistance. The baby was born June 18, 1915. About one month after the operation I observed physical changes in my legs; varicose veins came out on them. This condition existed until the child was born, during which time, on this account, I could hardly walk and suffered pain and was required to wear elastic stockings. Shortly after the birth of the child I suffered from a hernia, and was operated upon for it. I suffered no accident and do not know what occasioned the rupture other than the bearing-down exertions which occurred while I was at the hospital. A physican other than the defendant took care of me at the birth of my child. The baby died within three months after its birth. At one time after the incision I heard the defendant make a statement with reference to the operation in which he said he had made a mistake.''

As to this last statement by the plaintiff and in some other respects she was corroborated by other witnesses.

The defendant testified that in addition to the symptoms related by the plaintiff in her testimony she told him that she had been having hemorrhages between menstrual periods and suffered some dizziness; that she did not suspect pregnancy; that her condition was nothing like it had been with the first child; that considering the history of the case as related by her she was suffering from a fibroid tumor, that her condition was serious and required the performance of an operation; that the operation consisted of an incision about two and one-half inches long in plaintiff's abdomen; that upon making the incision he discovered that the plaintiff was pregnant and that there was no condition of tumor, whereupon he concluded that the plaintiff had given him an incorrect history of the case; sewed up, dressed, and bandaged the incision; that such an incision is called an exploratory incision, and would have been larger had he not found pregnancy.

According to the testimony of several medical witnesses produced by plaintiff, based upon the history of the case as claimed by plaintiff to have been furnished to the defendant, the defendant should have kept the plaintiff under observation for at least six weeks before operating; that if he had done this he would have discovered the error in his diagnosis, for he would have felt the movements of the living foetus and he would have heard the foetal heart beat.

According to the testimony of nine experts called for the defendant, he was justified in making an immediate operation for tumor only in the event of the presence of hemorrhages between regular menstrual periods; otherwise he should have kept the patient under observation and awaited developments.

From this résumé of the evidence it is quite clear, we think, that if the jury believed, as it appears they did, the testimony of the plaintiff as to what she told the defendant relating to the history of her case, then the operation was unnecessary, and their verdict cannot be disturbed.

Plaintiff closed her case without introducing any expert evidence, whereupon the defendant made a motion for nonsuit, arguing that the mere statement by defendant to the plaintiff and her mother that he had made a mistake in diagnosing plaintiff's case as one of tumor rather than pregnancy was not sufficient to establish negligence in the absence of testimony that such incorrect diagnosis was arrived at by reason of negligence. Assuming this to be true, still as evidence was introduced later in the case which tended to supply this defect, and as it does not appear that the defendant was prejudiced in the presentation of his defense by the circumstance that the testimony was produced later in the trial instead of during the presentation of plaintiff's case in chief, the judgment will not, upon that ground be reversed; for, as was said in *Peters* v. *Southern Pacific Co.*, 160 Cal. 48, 52, [116 Pac. 400], "it is well settled that an order denying a motion for nonsuit will not be disturbed, although the evidence at close of plaintiff's case was so weak that it might properly have been granted, if upon the trial the defect is overcome by evidence subsequently introduced." (See, also, *Lowe* v. *San Francisco etc. Ry. Co.*, 154 Cal. 573, [98 Pac. 678]; *Vaca Valley R. Co.* v. *Mansfield*, 84 Cal. 560, [24 Pac. 145].)

Neither do we think that there is any merit in defendant's point that he was prejudiced by the manner in which the court disposed of the motion.

The court committed no error in refusing defendant's requested instruction that, if there is more than one method of treatment recognized by the medical profession, a physician may adopt either, for the reason that the instruction was substantially given by the court in its charge to the jury when it said that if the defendant ''applied reasonable skill and judgment with ordinary care, he is not liable for any damages or injuries consequent upon an honest mistake or error in judgment in making a diagnosis, in prescribing treatment, or in determining upon an operation, and if what he did appears from the evidence to be in accordance with recognized authority and good current practice, you must find a verdict for the defendant.''

The defendant also complains of the action of the court in refusing certain other proposed instructions. As to those, we think their subject matter was embraced by what the court stated to the jury on the subjects of proximate cause and preponderance of the evidence.

Other objections to instructions given or proposed have even less merit than those already referred to, and no discussion of them is deemed necessary. The instructions as a whole fully and fairly covered every phase of the case.

Without serious objection from the defendant, plaintiff was permitted to testify that the child when born was physically normal, for the purpose of showing, as claimed by plaintiff, that the condition of the uterus was normal when examined by the defendant. Later, however, she testified that while the child upon its birth cried for about five minutes, thereafter for about five days it could not nurse, and any milk gotten into its stomach by other means caused nausea; that the child ''would vomit like a person coming out of an anesthetic.'' She also testified that this condition of her baby caused her mental anguish. This testimony was objected to on the ground that this was not an action by the parents for the loss of their child by reason of the acts of the defendant. The court was doubtful of the right of plaintiff to introduce this evidence and admitted it tentatively subject to a motion to strike out. Later on, no motion having been made to this end, the court of its own motion instructed the jury as follows:

"You are instructed that you are not to take into consideration any evidence whatsoever as to any mental suffering or worry that the plaintiff may have experienced by reason of any fear that her unborn child might be marked or affected by reason of any act on the part of the defendant. . . . You are instructed that if you should find for the plaintiff in this case, you cannot take into consideration any alleged injury to the said child in determining the amount of your verdict." We are bound to assume that the jury followed this instruction.

For the reasons given, the judgment is affirmed.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 11, 1919.