[No. 20146.  Department Two.  January 8, 1927.]

Ira B. Hollis, *Appellant*, v. T. M. Ahlquist *et al.*, *Respondents.*[1]

[1] Physicians and Surgeons (10-1)—Actions for Negligence—Evidence—Sufficiency. In an action for malpractice in setting a leg, a verdict is properly instructed for the defendant where all the evidence was to the effect that a proper method had been used and good results obtained.

Appeal from a judgment of the superior court for Spokane county, Carey, J., entered April 7, 1926, upon the verdict of a jury entered by direction of the court in favor of the defendants, in an action for malpractice. Affirmed.

*Kimball & Blake*, for appellant.

*Cannon & McKevitt*, for respondents.

Askren, J.—This appeal is from a judgment of the trial court entered upon a directed verdict in favor of the defendant, in an action for damages based on malpractice.

The appellant, a farmer, fifty-one years of age, fell from a load of hay, causing an oblique fracture of the large bone, or tibia, of the left leg at a point three or four inches below the knee. He was taken to a Spokane hospital, where the respondent was called to treat the leg. The leg was manipulated in an endeavor to place the bones in a correct position; examined through a

[1]Reported in 251 Pac. 871.

fluoroscope and X-rayed. The X-ray indicated a perfect alignment as well as apposition of the bones. A temporary cast known as the "Thomas Splint" was then put on the leg. After several days, the swelling began to subside and a plaster cast was put on. About forty-eight hours afterward, an X-ray was taken which showed that, while there was perfect alignment of the bones, there was not perfect apposition, since the bones overlapped about a quarter of an inch. The respondent considered whether it would be advisable to attempt to re-set the leg by forcing apposition, or to allow nature to heal in its own way, expecting apposition to result as the swelling subsided, and the muscles relaxed. It was decided to allow nature to proceed.

A bleb, characterized by the doctors as a blood blister caused by the original fracture and pressure upon the soft tissues of the leg, becoming painful, the cast was split and the fluid in the bleb drawn off. The appellant then went home and was attended thereafter by another doctor. Later, this suit was brought claiming a permanent injury to the leg.

[1] Upon the trial, the question of negligence offered by the appellant was based upon the fact that, since the X-ray picture taken when appellant first came to the hospital showed what appeared to be perfect alignment and apposition of the broken bone, then any result thereafter which did not indicate the same result must of necessity be the result of unskilful work upon the part of the doctor. No evidence of any kind was offered indicating in the remotest degree that the treatment given the injured member was not the approved and customary method sanctioned by the medical profession, nor was there anything from which even a lay member could surmise a wrong method of treatment, unless it be that, because appellant testified

that his leg was not in as good condition thereafter as might be expected, negligence in the treatment must follow as a matter of course.

Counsel for appellant have argued that, since the first X-ray showed a perfect result after the appellant had been brought to the Spokane hospital, even though he had been subjected to a long, hard ride by automobile, it indicated a situation which could be changed only by the action of the doctor. But this overlooks the testimony, which shows that this picture was taken after manipulation by the doctor in an endeavor to get the bone in proper position. But even if it were true that without manipulation the bones were in approximately correct position after his arrival at the hospital, all of the testimony in the case shows that with the swelling of the bruised leg the muscles contract and pull the short piece of the tibia upward and away from the longer piece. This was the condition shown when the X-ray picture was taken, about two days after the plaster cast was put on. It was also testified, without contradiction, that as the swelling departs the relaxation of the muscles allows the shorter piece of the tibia to resume its normal position, and that this is what happened in the instant case. Indeed, appellant's own doctor so testified.

X-rays were taken later on before trial, and it is appellant's contention that they show that this result was not obtained. The pictures are in evidence, and from an examination we are unable to say that this result was not reached. The callus union of the bone is quite apparent, and there is nothing to show any overlapping. In such a case, laymen must depend upon the testimony of experts. Even the doctors depend greatly, if not wholly, upon the evidence of experts in the reading of these pictures. The X-ray experts, as well as the doctors, testified that the result

reached was good, and there was no evidence that the last X-ray showed a lack of apposition.

Clearly the facts in this case demonstrated no negligence nor were there any facts the reasonable inference from which was negligence. A doctor is not to be charged with negligence because the result is not what is desired. *Ewing v. Goode,* 78 Fed. 442; *Lorenz v. Booth,* 84 Wash. 550, 147 Pac. 31. In spite of all his skill and learning, there are many factors over which he has no control, hence the rule so often announced by the courts that he is responsible in damages only when he fails to possess such skill and learning as is usually possessed by the average member of the profession in the locality where he practices, and to apply that learning with reasonable care. *Harju v. Allen,* 146 Minn. 23, 177 N. W. 1015; *Sawdey v. Spokane Falls R. Co.,* 30 Wash. 349, 70 Pac. 942, 94 Am. St. 880.

But here, as we have seen, every witness who testified, including appellant's own doctor, said that a good result was obtained.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, BRIDGES, and MACKINTOSH, JJ., concur.