[Sac. No. 5982.   In Bank.   Apr. 20, 1949.]

RUDY SINZ, Plaintiff and Appellant, v. RAYMOND L.
OWENS, Defendant  and Appellant.

Miller & Kroloff, Jack J. Miller, Yale S. Kroloff and Forrest M. Greenberg for Plaintiff and Appellant.

Gilbert L. Jones, Daniel S. Lane, Roy A. Weaver and Richard B. Daley for Defendant and Appellant.

Gibson, Dunn & Crutcher, Philip C. Sterry, Samuel O. Pruitt, Jr., Hartley F. Peart, Gus L. Baraty, Howard Hassard, Alan L. Bonnington, Joseph F. Rankin, Rankin, O'Neal & Luckhardt and Anthony J. Kennedy, as Amici Curiae on behalf of Defendant and Appellant.

EDMONDS, J.—A jury returned a verdict for $17,500 in favor of Rudy Sinz for damages occasioned by the medical treatment of Dr. Raymond L. Owens. Subsequently, the physician's motion for a new trial was denied upon condition that Sinz consent to a reduction in the amount of damages to $10,000. Sinz refused to accept the reduction and a new trial was granted on the issue of damages alone. Dr. Owens has appealed from the judgment and Sinz has filed a cross-appeal from the order granting a new trial.

As the result of a traffic accident, Sinz sustained a double comminuted fracture of the tibia and fibula of his left leg. The breaks were just below the knee and above the ankle. He was taken to a hospital in Lodi and, at his request, Dr. Owens was called to treat his injuries. The controversy centers around the treatment given by Dr. Owens upon the basis of a series of X-ray photographs and other evidence tending to show the patient's progress.

The first photographs were taken shortly after Sinz reached the hospital. According to Dr. Owens, because they showed good bone alignment, he applied a plaster cast. The photographs taken immediately after the cast was applied disclosed some angulation, but the doctor stated that he was satisfied with the results as shown by them. Photographs taken about 12 days later indicated further angulation and the absence of callus formation. When the cast was taken off, three months after the injury, the angulation was approximately 12 degrees and the callus formation still soft.

By the end of another two months, X-ray pictures showed that the angulation had increased to 19 degrees at the upper fracture and 5 degrees at the lower one. At the time of trial, the angulation was 30 degrees at the upper fracture and the same amount as before at the lower break.

To prove malpractice, Sinz called Dr. Allen F. Morrison as an expert. Dr. Morrison testified that the standard of practice in California is to use skeletal traction on a double comminuted fracture. He also declared that, regardless of the choice of treatment made by Dr. Owens when he first saw his patient, the X-ray photographs subsequently taken showed the need for some form of traction, and traction would have been feasible as late as the time when the cast was removed. Other evidence in the record is to the effect that, at the time of the accident, it was the general custom of physicians practicing in Lodi to refer cases requiring skeletal traction to a specialist in Stockton, about 12 miles away.

As grounds for reversal of the judgment, Dr. Owens contends that Dr. Morrison was not qualified to testify as to the standards of medical practice in Lodi. He also relies upon error in the instructions to the jury, and asserts that he was prejudiced by the submission of the X-ray photographs to the jurors for their inspection. In his appeal from the order conditionally denying a new trial, Sinz takes the position that because insufficiency of the evidence was not specified as a

ground for the ruling, the court had no authority to set aside the jury's determination fixing the amount of the damages.

The *voir dire* examination of Dr. Morrison shows that he was then practicing medicine in the town of Oakdale, about 27 miles south of Stockton. He testified that his practice was a general one and extended to Turlock, Modesto, and Escalon, the farthest of these places being approximately 40 miles south of Stockton. Lodi, where Dr. Owens had his offices, is about 12 miles north of Stockton. Oakdale and Turlock are smaller than Lodi; Modesto is somewhat larger.

The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony (*Trindle* v. *Wheeler*, 23 Cal.2d 330, 333 [143 P.2d 932]; *Pearson* v. *Crabtree*, 70 Cal.App. 52 [232 P. 715], noted in 14 Cal.L.Rev. 70; 7 Wigmore on Evidence § 2090 [a], p. 453), unless the conduct required by the particular circumstances is within the common knowledge of the layman. (*Engelking* v. *Carlson*, 13 Cal.2d 216 [88 P.2d 695].) And competency of an expert "is in every case a relative one, i. e. relative to the topic about which the person is asked to make his statement." (2 Wigmore on Evidence [3d ed.] § 555, p. 634.)

The criterion in this regard is not the highest skill medical science knows; "the law exacts of physicians and surgeons in the practice of their profession only that they possess and exercise that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances" (41 Am.Jur. [Phys. & Surg., § 82] p. 201). The proof of that standard is made by the testimony of a physician qualified to speak as an expert and having in addition, what Wigmore has classified as "occupational experience—the kind which is obtained casually and incidentally, yet steadily and adequately, in the course of some occupation or livelihood." (2 Wigmore on Evidence [3d ed.] § 556, p. 635.) He must have had basic educational and professional training as a general foundation for his testimony, but it is a practical knowledge of what is usually and customarily done by physicians under circumstances similar to those which confronted the defendant charged with malpractice that is of controlling importance in determining competency of the expert to testify to the degree of care against which the treatment given is to be measured.

The courts have encountered some difficulties in stating a general rule by which to measure the qualifications of a physician to testify on the issue of standard of care. As developed by succeeding decisions, it has not been uniformly phrased either in language or in substance, but originally, and for reasons of practical necessity, it was based upon geographical considerations which stemmed from the variations in facilities in various communities.

In California the standard has been variously limited to general medical custom in the "same locality" or "vicinity" (*Trindle* v. *Wheeler*, 23 Cal.2d 330 [143 P.2d 932]; *McGuire* v. *Baird*, 9 Cal.2d 353 [70 P.2d 915]; *Taylor* v. *Fishbaugh*, 26 Cal.App.2d 300 [79 P.2d 174]; *Rasmussen* v. *Shickle*, 4 Cal. App.2d 426 [41 P.2d 184]; *Howe* v. *McCoy*, 113 Cal.App. 468 [298 P. 530]; *Hopkins* v. *Heller*, 59 Cal.App. 447 [210 P. 975]), or "the same *or similar* community" or "locality" (*Thomason* v. *Hethcock*, 7 Cal.App.2d 634 [46 P.2d 832]; *Dameron* v. *Ansbro*, 39 Cal.App. 289 [178 P. 874]; *Priestley* v. *Stafford*, 30 Cal.App. 523 [158 P. 776]), and in some cases the "same" locality is used interchangeably with the "same or similar" locality. (*Warnock* v. *Kraft*, 30 Cal.App.2d 1 [85 P.2d 505]; *McLennan* v. *Holder*, 1 Cal.App.2d 305 [36 P.2d 448].) The distinction between the two statements of the requirement, insofar as technical interpretation is concerned, is obvious, and the parties, at considerable length, have argued as to the effect of the language used. However, in the majority of cases wherein the qualification as to locality has been stated, it constitutes mere dictum. Emphasis on strict interpretation of either statement of the rule in this regard, tends to obscure the sole purpose which justifies it.

It has been said that the theory supporting the rule that the expert must be familiar with the degree of care used in the particular locality where the defendant practices "is that a doctor in a small community or village, *not having the same opportunity and resources for keeping abreast of the advances in his profession*, should not be held to the same standard of care and skill as that employed by physicians and surgeons in large cities." (*Warnock* v. *Kraft*, 30 Cal.App.2d 1, 3 [85 P.2d 505].) In earlier days, when there was little intercommunity travel, the courts required personal experience with the practice of physicians in the particular community where the plaintiff was treated as the basis of the expert's testimony concerning the degree of care which should have been used. But the law recognizes that "The duty of a

doctor to his patient is measured by conditions as they exist, and not by what they have been in the past or may be in the future. Today, with the rapid methods of transportation and easy means of communication, the horizons have been widened, and the duty of a doctor is not fulfilled merely by utilizing the means at hand in the particular village where he is practicing. So far as medical treatment is concerned, the borders of the locality and community have, in effect, been extended so as to include those centers readily accessible where appropriate treatment may be had which the local physician, because of limited facilities or training, is unable to give." (*Tvedt* v. *Haugen*, 70 N.D. 338 [294 N.W. 183, 132 A.L.R. 379, 386].)

But Sinz seeks to advance this development beyond permissible bounds. He argues that ''[i]t is a matter of both common knowledge and common sense that the standards of medical practice should be, and in fact are, the same in towns and cities within a large geographic area. For example, the San Joaquin Valley, wherein both Lodi and Oakdale are situated. This court may well take judicial notice of the fact . . .'' However, the San Joaquin Valley is an area containing two cities of more than 50,000 population and communities ranging from that number to the smallest way stations. This merely emphasizes the fact that geographical generalizations or localizations do not provide a practical basis for measuring ''similar circumstances.'' In any event, the question as to what constitutes similar circumstances is not one solely for judicial notice of an appellate court. It presents an issue which concerns the competency of a person called to testify as a witness, and must be decided upon a consideration of all relevant evidence.

With regard to the standard of care in Lodi, Dr. Sanderson, who was qualified from occupational experience to compare the standard of care in both places, as a witness for Dr. Owens stated: ''I would say that [the] standard in Lodi . . . is just as good as [that of] the average doctor in Stockton.'' Dr. Morrison, testifying for Sinz, was not personally acquainted with conditions in Lodi but he said that although ''usually the smaller the community the lower the plane of care,'' as to treatment of fractures of this particular nature, the same standard of care prevails throughout California.

Although this evidence is somewhat vague, the qualification of an expert witness is a question for the sound discretion of the trial court and its ruling will not be disturbed upon appeal

unless a clear abuse of it is shown. (*Sowden* v. *Idaho Quartz M. Co.*, 55 Cal. 443, 451; *Commonwealth* v. *Capalbo*, 308 Mass. 376 [32 N.E. 225]; *Commonwealth* v. *Rouchie*, 135 Pa.Super. 594 [7 A.2d 102, 107]; 2 Wigmore on Evidence § 561, p. 641.) Considering the testimony of Dr. Morrison and other evidence before the court, it cannot be said that there was any abuse of discretion in the determination that, as to the medical treatment of fractures, the conditions in Oakdale, Lodi, and other adjoining areas were sufficiently alike to make him competent to testify with regard to the standard of medical practice ordinarily followed under similar circumstances.

This conclusion is not based exclusively upon geographical proximity, and necessarily there can be no hard and fast rule laid down as a test for experience requisite as a basis for testimony as to custom and practice. But where all of the towns in which a physician practices are tributary to a city, such as Stockton, and there is testimony that the degree of care at the place of treatment is equal to that in the city, the evidence is sufficient to support a finding of similar circumstances. The essential factor is knowledge of similiarity of conditions; geographical proximity is only one factor to be considered.

Two cases upon which Dr. Owens relies heavily are *McNamara* v. *Emmons*, 36 Cal.App.2d 199 [97 P.2d 503], and *Bickford* v. *Lawson*, 27 Cal.App.2d 416 [81 P.2d 216]. In the McNamara case, "Plaintiffs produced two physicians as witnesses who had never practiced in Ontario and knew nothing of the standards of practice there. *Neither did they know that the communities of Ontario and San Bernardino, where they practiced, were similar or had similar standards of practice.*" (*Supra*, p. 207.) Aside from this failure of the witnesses to testify to the conditions in the two communities, there was no independent evidence of similarity of conditions. The two physicians testified to the standard of care in San Bernardino, a city of some 50,000 population, for the purpose of establishing the liability of a physician practicing in Ontario, a town of less than 15,000. Although the decision was rested on other grounds and the discussion as to standard of care pertained only to the issue of prejudice resulting from other errors, the opinion shows that the minimum requirements of the rule as to similarity of conditions were not met. The distance between the two towns was stated as affecting the physician's duty to travel from one place to the other to continue treatment, but it was not considered as a factor in determining similarity of conditions.

In *Bickford* v. *Lawson, supra,* the witness testifying as to what he would have done under the same circumstances, "admitted he did not know what the practice of other physicians was in reducing and treating such fractures in that or any other locality." (P. 424.) The trial court's ruling in striking such testimony from the record was properly sustained, the witness being clearly incompetent to establish the general degree of care under circumstances similar to those at the time of treatment.

Emphasizing occupational experience as the dominant qualification, that is, the witness must have a familiarity with the existing practice under the circumstances and not merely that he practice medicine or live in the area, are the cases of *McGuire* v. *Baird,* 9 Cal.2d 353 [70 P.2d 915] ; *Taylor* v. *Fishbaugh,* 26 Cal.App.2d 300 [79 P.2d 174] ; and *Soady* v. *Washburn,* 114 Cal.App. 82 [299 P. 560]. In the McGuire and Taylor cases there was no question as to the practice of the witness in the vicinity, but the court pointed to a lack of knowledge of the manner in which other doctors treated the condition presented to the defendant. In *Soady* v. *Washburn, supra,* the witness was a retired naval officer living in San Francisco. An objection to his testimony as to the standard of care was properly sustained, for it appeared that he had never engaged in civil practice in California or elsewhere.

The more recent California cases upon the question of competency of a doctor in one community to testify as to the standard of care at another place, although phrasing the rule in terms of "same" or "similar" locality, have shown a clear tendency to depart from the earlier geographical limitations of the rule. Thus in *Sales* v. *Bacigalupi,* 47 Cal.App.2d 82 [117 P.2d 399], the ruling admitting the testimony of a doctor practicing in Oakland as to medical treatment in San Francisco was upheld with comment upon "the close proximity of the two cities and the metropolitan character of the entire area." And in *Pierce* v. *Paterson,* 50 Cal.App.2d 486 [123 P.2d 544], a general statement that the witness was familiar with the degree of care throughout Alameda County was held sufficient although apparently, there was no testimony of familiarity with conditions in the town where the treatment was given.

The leading California case on this point is *Lewis* v. *Johnson,* 12 Cal.2d 558 [86 P.2d 99], wherein the testimony of doctors practicing in Los Angeles was held admissible as to the standard of care in Long Beach. The court there stated

the reason for the early rule requiring familiarity with the particular locality as "in order that the standards of widely separated localities with different practices may be excluded. But to make the exclusion rest arbitrarily upon a geographical line . . . would be a misuse of the rules of evidence and an unjustifiable emphasis on empty technicalities. Common knowledge, as well as testimony of the doctors on both sides, tells us that the method used in treating this particular kind of fracture was one in use throughout the world." (P. 561.)

The second contention of Dr. Owens is based on the italicized portion of the following instruction: "By undertaking professional service to a patient, a physician and surgeon impliedly represents that he possesses, and it is his duty to possess, that degree of learning and skill possessed by physicians and surgeons of good standing, practicing in the same locality. *If he undertakes such a service in a special branch of medical, surgical or other healing science, and if at that time and in the same locality there are members of his profession who specialize in, and limit their practice to, that particular branch of the healing profession, it is his duty to possess that degree of learning and skill ordinarily possessed by physicians and surgeons of good standing who engage in that special practice in the same locality.*" It is argued that this amounts to imposing upon a general practitioner the duty of a specialist.

This instruction is No. 214 of California Jury Instructions, Civil (BAJI) and the editors of that work have made certain modifications in it. (See Cal. Jury Instructions, Civil [3d ed.]; 1948 Pocket Parts, pp. 169-73.) An excellent brief by amicus curiae points up the objection by noting that the instruction fails to include the element that the physician "discovered or should have discovered" that the injury required expert treatment before he is under any special duty. A sounder instruction is suggested by *Benson v. Dean*, 232 N.Y. 52 [133 N.E. 125, 127], in which the court said: "If under the circumstances a reasonably careful skillful general practitioner . . . would have suggested the calling into consultation of a . . . specialist, the defendant was negligent for failing to do so." Such an instruction would clearly avoid the far reaching implications of the instruction now under review, and would not impose an unreasonable degree of skill upon the ordinary practitioner. Further, the suggested instruction would allow the jury to find the defendant guilty of negligence if he failed to recommend a specialist when the

particular facts justified such action. On the other hand, it would afford the practitioner reasonable discretion as to such elements as the patient's mental and emotional condition, his known financial situation, and the many other variants which a physician reasonably must consider in treating human ailments.

For these reasons, the court should not have given the instruction in the quoted form, but the error was not prejudicial within the meaning of section 4½ of article VI of the Constitution. ▮ Sinz offered no testimony to prove any standard of skill or care above that of the general practitioner. On cross-examination of Dr. Sanderson, the only orthopedic specialist to testify, he was asked several questions as to how ·he would have treated Sinz, but the inquiry was not directed to the general standard of skill of specialists. Further, Dr. Sanderson was an adverse witness and his answers in this regard were contrary to the position of Sinz.

The record shows a "very complicated fracture in the leg" and "one of the most difficult fractures that we can treat." Although there was testimony that, in the circumstances, the ordinary standard of care would have been either to apply skeletal traction or to call in a specialist to do so, the evidence must be considered in connection with the undisputed fact that, at the time of the accident and first X-ray photograph, the leg was in reasonably good alignment. But the successive pictures showed progressive increase in angulation and poor callus formation. According to Dr. Morrison, at the time the cast was taken off, traction still could have been applied and the angulation corrected. The failure of Dr. Owens to recognize the inadequacy of his treatment is strong evidence of a breach of the standard of care testified to by Dr. Morrison. Under these circumstances, no prejudice resulted from the challenged instruction.

▮ Apparently the complaint that the trial court allowed the jury to view X-rays taken of the injured leg at the time of the injury, without a qualifying instruction limiting consideration of them to the sole purpose of illustration, has been abandoned by Dr. Owens in the presentation of his appeal to this court. However, the record shows that they were properly introduced in evidence and he and the experts who testified for both of the parties interpreted them for the jury. There was no reason for any special cautionary instruction in regard to this evidence and neither *Hollis* v. *Ahlquist,* 142 Wash. 33 [251 P. 871], nor *Vale* v. *Campbell,* 123 Ore. 632

[263 P. 400], support the position taken by Dr. Owens in his brief.

The question presented by the cross-appeal of Sinz is whether the trial court properly granted a new trial upon his refusal to accept a reduction in the judgment from $17,500, the amount of damages fixed by the jury, to $10,000. The trial judge, although including a reference to insufficiency of the evidence in a memorandum opinion, did not specify in the order that the motion was granted upon that ground. Under section 657 of the Code of Civil Procedure, Sinz contends, because of this omission, there is a conclusive presumption that the order was not based upon insufficiency of evidence and must have been made on the ground of ''[e]xcessive damages, appearing to have been given under the influence of passion and prejudice.'' (Code Civ. Proc., § 657[5].) It is argued, in the language of *Casaretto* v. *DeLucchi*, 76 Cal. App.2d 800 [174 P.2d 328], that: ''[I]f the evidence before the trial court is conflicting and there is substantial evidence to sustain the award, no right to grant a new trial on the ground of excessiveness of the verdict exists where insufficiency of the evidence is not also specified as a ground of the order.''

Dr. Owens relies upon a line of cases which, after analyzing the basis for allowing a new trial because of excessiveness of the verdict due to passion and prejudice, realistically conclude that such an order ''necessarily is granted on the ground of the insufficiency of the evidence to sustain a verdict for the amount awarded by the jury.'' (*Griffey* v. *Pacific Electric Ry. Co.*, 58 Cal.App. 509, 513 [209 P. 45] ; *Meinberg* v. *Jordan*, 29 Cal.App. 760, 762 [157 P. 1005].) In view of the provision in section 657 of the Code of Civil Procedure that insufficiency of the evidence must be specified in writing in the order ''otherwise, on appeal from such order it will be conclusively presumed that the order was not based upon that ground,'' there is perhaps a certain anomaly in the Legislature's failure to include excessiveness of damages in the proviso. This difficulty has been commented upon and criticized (see note, 12 So.Cal.L.Rev. 501, 503), but the point is not of controlling importance here, because the same rule governing appellate review applies to both grounds.

The language quoted from *Casaretto* v. *DeLucchi*, *supra*, is not a correct statement of the law and is disapproved as directly in conflict with the rule laid down in *Dreyer* v. *Cyriacks*, 112 Cal.App. 279, 283 [297 P. 35] (approved in

*Koyer* v. *McComber*, 12 Cal.2d 175 [82 P.2d 941]), with regard to appellate review of an order granting new trial for excessive damages: ''It may be conceded that the rule controlling in cases where the reviewing court is asked to reverse a judgment upon the ground of excessive verdict, after the trial court has refused to set aside the same, is that the verdict must stand unless it is so grossly disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice, and raise at once a strong presumption that it is based on prejudice, passion or corruption, rather than sober judgment. . . . But where, as here, we are asked to review the act of the court, where in the exercise of its discretionary power it has seen fit to set aside the verdict on this ground, a very different rule prevails. Every intendment is to be indulged here in support of the action of the court below, and it will not be disturbed if the question of its propriety be open to debate.''

Applying that rule to the facts of the present case and considering the indefinite and conflicting evidence upon the degree of disability suffered by Sinz, the lack of a clear showing that the leg could have been completely cured in the exercise of due care, and his life expectancy, it cannot be said that the trial court abused its discretion in granting the new trial upon the ground of excessive damages.

The order granting new trial upon the issue of damages alone is affirmed.

Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I agree that the judgment against the defendant physician should be affirmed, but I think the order granting the new trial must be reversed for there is no showing of passion or prejudice in the damage award and the trial court cannot reweigh the evidence in passing on a motion for a new trial on the ground of excessive damages. Moreover, I believe any physician practicing in this state is qualified as an expert in a malpractice case in any part of the state.

Turning first to defendant's motion for a new trial, it appears that while the motion for a new trial was made upon all the grounds specified in the statute, the order granting the new trial was ''on the question of damages alone.'' (The plaintiff was given an opportunity by the order to have the new trial denied by accepting a lesser sum for damages, but

refused.) Nothing was said in the order about insufficiency of the evidence. Justice Edmond's opinion holds that under those circumstances, the appellate court may consider a conflict in the evidence, insufficiency of the evidence, as grounds justifying the action of the trial court in granting a new trial. It is my position that the only thing that may be considered is whether there was passion or prejudice, and in considering such, the trial court has not the power to weigh the evidence or resolve conflicts such as it has when passing upon a motion for a new trial on the ground of insufficiency of the evidence, and in reviewing such order on appeal this court is bound by the same rule.

The statutory law on the subject is clear. It is provided that a new trial may be granted on all or part of the issues for the thereafter mentioned causes, part of which are: "5. Excessive damages, appearing to have been given under the influence of passion or prejudice; 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against law; . . . . When a new trial is granted, on all or part of the issues, upon the ground of the insufficiency of the evidence to sustain the verdict or decision, the order shall so specify this in writing and shall be filed with the clerk within ten days after the motion is granted; otherwise, on appeal from such order it will be conclusively presumed that the order was not based upon that ground. The court may direct a party to prepare the order." (Code Civ. Proc., § 657.) It should be obvious that insufficiency of the evidence and excessive damages *are two separate and distinct grounds for granting a new trial.* There is no justification for blending them together, that is, treating insufficiency of the evidence as part of the excessive damage ground. The latter ground is confined to passion or prejudice and that alone. The insufficiency of evidence ground is likewise separately treated. Indeed, it is treated in detail. When a new trial is granted on the latter ground "on all *or part* of the issues" the order *must* so specify. Plainly, if a new trial as to damages alone is granted it is on part of the issues, and if insufficiency of the evidence is the reason or cause for such partial new trial, the order must so state. On the other hand, where the new trial is granted as to damages alone, but insufficiency of evidence is not the ground, then the only ground is passion or prejudice, and such ground must be examined without weighing the evidence or resolving conflicts therein against the verdict. No other interpretation of section 657 is reasonable or even

possible. *Koyer* v. *McComber*, 12 Cal.2d 175 [82 P.2d 941] (later discussed herein), relied upon by Justice Edmonds, is discussed at length in a well-written article by Mr. John A. Weyl appearing in 12 Southern California Law Review, pages 501-503, where it is aptly said: "With the establishment of procedural legislation, the grounds for new trial were prescribed by statute. Section 657 of the Code of Civil Procedure sets out the grounds upon which a motion for a new trial may be based; and this enumeration has been held to be exclusive. There have been many cases which follow the letter of the code and do not allow a new trial on the ground of excessive damages unless there is an indication of passion or prejudice upon the part of the jury. However, it is submitted that, upon at least two bases, the courts have not regarded this section as being an exclusive classification. First, the courts have consolidated the grounds in subsections 5 and 6, and thereby created a new ground. For example, in *Doolin* v. *Omnibus Cable Company* [125 Cal. 141 (57 P. 774)], the court opined that: 'to say that a verdict for damages was enhanced by passion or prejudice is one mode of saying that the evidence did not justify it; and the only means of discovering therein the element of passion or prejudice, within the meaning of the statute, is by comparing the amount with the evidence which was before the court at the trial.'

"Second, the Legislature, in enacting Section 657(5), said a motion for new trial might be based upon excessive damages, appearing to have been given under the influence of passion or prejudice. Applying the well known doctrine of expressio unius est exclusio alterius, it may well be argued that excessive damages in such a case was the only basis for the motion upon this ground, and that this was the legislative intent. It would seem difficult to reconcile this construction with the statement in *Meinberg* v. *Jordan* [29 Cal.App. 760, 762 (157 P. 1005)], to the effect that, because the court declared the damages were excessive, it need not mean that the trial court was of the opinion that the verdict was the result of passion or prejudice, but might be construed to mean that the trial court was not satisfied that the finding of the jury as to the extent of the damages suffered was supported by the evidence. But the declaration found in *Sweet* v. *Gray* [141 Cal. 63 (74 P. 439)], that the evidence is insufficient to justify the verdict or other decision, is a ground distinct from that of damages appearing to have been given under the influence of passion or prejudice, seems to uphold the literal wording of the code provision.

"There is an important practical aspect to the present problem, for the code says: 'when a new trial is granted on all or part of the issues, upon the ground of insufficiency of the evidence to sustain the verdict, the order shall so specify; otherwise, on appeal from such order it will be presumed that the order was not based upon that ground.' [Cal. Code Civ. Proc., § 657.] Hence, according to this limitation, while it would be possible to have the order show that the motion was based upon insufficiency of the evidence and have a determination of whether the verdict was excessive; on the other hand, it should not be possible to have a motion on the ground of excessive damages and have a review as to the insufficiency of the evidence without such being contained in the order by the trial court. Yet it seems that where the two grounds for a new trial are combined it might lead to an evasion of this limitation in the code." It is not necessary to consider or resolve the conflict in the authorities above mentioned. They were all *decided without giving any consideration to the amendment to section 657 which added the last paragraph thereto* requiring insufficiency of evidence to be stated in the order. For illustration, the cases of *Dreyer* v. *Cyriacks*, 112 Cal.App. 279 [297 P. 35], and *Koyer* v. *McComber,* 12 Cal.2d 175, *supra,* gave no consideration whatever to the effect of the amendment. For the same reason, the matter cannot be brushed aside as does Justice Edmonds by the statement: "But the point is not of controlling importance here, because the same rule governing appellate review applies to both grounds." The same rule of appellate review does not and cannot prevail in the light of the amendment and the cases cited, Dreyer and Koyer, do not so hold for the amendment was not considered. It should be manifest that if the rule announced by Justice Edmonds is to prevail, the amendment and its purpose are completely thwarted as far as new trials on the ground of excessive damages are concerned.

It should be noted that it is not possible for the trial court in passing on a motion for a new trial on any ground other than insufficiency of the evidence to consider the latter at all. Indeed, by basing the order granting a new trial on any other ground, the trial court holds that the *evidence is sufficient.* So this court said: "When the order [granting a new trial] is made upon a ground other than that of insufficiency of the evidence, the court impliedly holds that there is sufficient evidence to support the verdict, and 'on appeal from such order it will be conclusively presumed that the order was not

based upon that ground.' (Code Civ. Proc., § 657; *Fennessey* v. *Pacific Gas & Elec. Co., supra,* p. 544 [10 Cal.2d 538 (76 P.2d 104)].)'' (*Brignoli* v. *Seaboard Transportation Co.,* 29 Cal.2d 782, 791 [178 P.2d 445].)

The only case that has given consideration to the requirement that insufficiency of evidence be specified is *Casaretto* v. *DeLucchi,* 76 Cal.App.2d 800, 814 [174 P.2d 328], where the court reaches the correct result, stating: ''The motion for a new trial on the judgment based on the issues raised by the cross-complaint was made on the ground of excessive damages, insufficiency of evidence and errors in law occurring at the trial. The trial court, it will be remembered, granted this motion for a new trial unless the DeLucchis agreed to a reduction in damages from $6,500 to $500. *The trial judge did not specify insufficiency of the evidence as a basis of his order, so that that ground must be disregarded.* (Code Civ. Proc., § 657.) No ground at all was specified as the basis of the order. It is obvious, however, that the basis of the order granting the new trial must have been excessive damages in view of the provision of the order that if the DeLucchis would accept a reduction to $500 the motion would be denied. However, the trial court's power in this respect is much more limited than it is when the order is based on insufficiency. Section 657, subdivision 5, of the Code of Civil Procedure, provides that a new trial may be granted on the ground of 'excessive damages, appearing to have been given under the influence of passion or prejudice.' A new trial may not be granted on this ground merely because the verdict seems large, but only when it appears to have been given under the influence of passion or prejudice. The trial court may interfere with the verdict on this ground only where the verdict is so disproportionate to any reasonable limit of compensation warranted by the facts as to shock the sense of justice. Thus if the evidence before the trial court is conflicting, and there is substantial evidence to sustain the award, no right to grant a new trial on the ground of excessiveness of the verdict exists where insufficiency of the evidence is not also specified as a ground of the order. These principles are all well settled. (See cases collected 20 Cal.Jur., p. 99 et seq., § 64 et seq.)''

There is nothing in the record in this case to indicate that the jury was motivated by passion or prejudice and, therefore, the order granting the motion cannot be sustained on this ground.

I believe that in this modern day the standard of care of a physician should not be limited to that followed in any particular locality smaller, at least, than the state. The circumstances and conditions as to various localities no doubt vary, but the standard should not. Those circumstances and conditions are merely factors that should be given consideration by the expert witness and finder of fact. The rule stated in the Restatement is that: "In those professions which can be safely practiced only by persons who have been trained thereto, one practicing his profession upon others whom he accepts as patients or clients is required to have the skill normal to the average member of the profession. If however, he professes special skill in a particular branch of his profession, he is bound to exercise such special skill." (Restatement of the Law of Torts § 299, com. d.) The following cases in California in stating the rule have not mentioned any qualifications as to "vicinity," "locality," or other geographical limitations. (*Perkins* v. *Trueblood,* 180 Cal. 437 [181 P. 642]; *Say* v. *Barber,* 202 Cal. 679 [262 P. 312]; *Houghton* v. *Dickson,* 29 Cal.App. 321 [155 P. 128]; *Foreman* v. *Hunter Lumber Co.,* 36 Cal.App. 763 [173 P. 408]; *Linn* v. *Piersol,* 37 Cal.App. 171 [173 P. 763]; *McCollum* v. *Barr,* 38 Cal.App. 411 [176 P. 463]; *Johns* v. *Pond,* 38 Cal.App. 643 [177 P. 293]; *Mernin* v. *Cory,* 145 Cal. 573 [79 P. 174]; *Ley* v. *Bishopp,* 88 Cal.App. 313 [263 P. 369].) It has been said: "The rule is not such skill as is possessed by medical men in the same locality, for there may be none other, or not a sufficient number of competent physicians to set a standard. All may be quacks, and the law can in no case countenance quackery. But what is required is that he shall possess such skill as capable members of the profession ordinarily possess under similar circumstances, having regard to similar localities and the opportunities they afford for keeping abreast with the advance in medical knowledge and science." (Shearman and Redfield on Negligence § 617, p. 1532.) As long ago as 1916, the Supreme Court of Minnesota said: "We think it is plainly correct that the locality in which the physician or surgeon practices must be considered in determining whether he has the requisite skill and learning, but we do not think that he is bound to possess and exercise only that degree of skill and learning possessed by other practitioners in the same locality, if by that is meant the same village or city. If the same general locality is meant, as, for instance, the Northwest, or the state, no fault could be found with such a

rule. But in these days the physician or surgeon in a village like Cloquet is not hampered by lack of opportunity for advancement. Frequent meetings of medical societies, articles in the medical journals, books by acknowledged authorities, and extensive experience in hospital work put the country doctor on more equal terms with his city brother. He would probably resent an imputation that he possessed less skill than the average physician or surgeon in the large cities, and we are unwilling to hold that he is to be judged only by the qualifications that others in the same village or similar villages possess.'' ( *Viita* v. *Fleming,* 132 Minn. 128 [155 N.W. 1077, 1081, Ann.Cas. 1917E 678, L.R.A. 1916D 644].)

The foregoing is quoted with approval in *Flock* v. *J. C. Palumbo Fruit Co.,* 63 Idaho 220 [118 P.2d 707, 716] ; *Hodgson* v. *Bigelow,* 335 Pa. 497 [7 A.2d 338, 344].

We can take judicial notice of the fact that there are but four medical schools in California which meet the requirements prescribed by the State Board of Medical Examiners for the education and training of medical students in this state and that no one is eligible for admission to practice medicine in California unless he is a graduate of a medical school which meets the requirements prescribed by said board and passes an examination given by the Board of Medical Examiners of California or of some other state entitled to recognition in this state on the basis of reciprocity. (*Mann* v. *Board of Medical Examiners,* 31 Cal.2d 30 [187 P.2d 1].) It seems obvious, therefore, that the education and training of medical students who are eligible to practice medicine in California is a matter of some uniformity and that the qualifications of a physician and surgeon to practice in California does not depend upon the locality in which he is engaged in practice, but upon the education and training which he has received in institutions in which the method and scope of instruction and the technique in training are substantially uniform. It should follow, therefore, that the standard of practice of physicians and surgeons in California should be sufficiently uniform throughout the entire state to permit a physician and surgeon in one locality to qualify as an expert witness in any other locality, even though he is not engaged in practice in the locality in which he is called upon to testify. It is true, of course, that physicians and surgeons in some localities may not have the equipment or facilities for diagnosis and treatment of human ailments which are possessed by physicians and surgeons in other localities, but this is a factor which the

trier of fact may take into consideration in determining whether, in the particular case, the conduct of the physician and surgeon was such that it amounted to negligence under the circumstances as disclosed by the evidence.

In view of the fact that there are cross-appeals in this case and the entire record is before us for review, I would reverse the order granting a new trial and affirm the judgment in favor of plaintiff.