[Civ. No. 15067.   First Dist., Div. Two.   Oct. 10, 1952.]

CARL C. PEARCE, Appellant, v. FREDERICK G. LINDE et al., Respondents.

Emmett R. Burns, Arthur C. Zief and Rinaldo A. Carmazzi for Appellant.

Harold C. Brown, as Amicus Curiae on behalf of Appellant.

Robert L. Lamb and Robert A. Haughwout for Respondents.

Hartley F. Peart, Gus L. Baraty, Howard Hassard, George A. Smith and Alan L. Bonnington, as Amici Curiae on behalf of Respondents.

NOURSE, P. J.—Plaintiff sued the two individual defendants and the Franklin Hospital for injuries alleged to have been the result of negligent medical practice. At the close of plaintiff's case separate motions for nonsuit were made and granted. Thereafter a separate judgment was entered in favor of the Franklin Hospital. An appeal from that judgment was dismissed by order of this court on October 8, 1951, on the ground that it had been abandoned. Though the record does not show that a judgment of nonsuit was entered in favor of the two individual defendants the appeal was taken on the assumption that such a judgment was entered and the respondents do not raise the point here.

The main ground of appeal is that the trial court erred in taking from the jury the determination of the question whether the defendants were negligent in failing to take

X-rays of plaintiff's heel in the course of their treatment. The thesis is based on a misconception of the facts. The heel had been injured when the plaintiff fell while working on a scaffolding in the city of Stockton. X-rays were taken and used by Dr. Sanderson who was attending the plaintiff at the time. Following his injury plaintiff had spent seven weeks in a Stockton hospital where he was treated by Dr. Sanderson and where his condition had steadily improved. Since it was an industrial injury plaintiff was then sent to Dr. Linde and Dr. Forcade for a final examination leading to a certification for final rating for compensation. X-rays were again taken and from the examination then made these doctors recommended an operation on both heels. Plaintiff refused to permit them to operate on his right foot, but permitted an operation on the left heel. Plaintiff was under their treatment for nine months when he was certified by them as ready for a permanent disability rating. Sometime thereafter plaintiff had a fall in his home and suffered permanent injury to his left heel. He was again hospitalized and a bone graft was performed. The defendants then urged plaintiff to have X-rays taken but he refused to do so.

Appellant's argument based on the assertion that no X-rays were taken is based on a false premise since the only testimony in the record is that X-rays were taken. ■ And it must be presumed that they were sufficient since there is no word of testimony indicating that they were insufficient, and no testimony from which the jury could possibly infer that more pictures were necessary.

Appellant's second point—that a prima facie case of negligence can be established from the testimony of the defendant—is not debatable.

■ His third point is that the trial court erred in refusing to accept as an expert a witness called by the plaintiff. This doctor was licensed to practice medicine in both California and Nevada. Since 1931 he had practiced in Reno, Nevada, and had no practice in California. He was a specialist in internal medicine. He had had no experience in orthopedics or in any other branch of surgery. Patients coming to him requiring treatment in orthopedic surgery were all referred by him to an expert in that branch of the practice. He testified that he had some knowledge of what was the proper professional treatment of such cases from what he had read or from what he had heard from experts in that line. Since the question involved was whether the defendants had used

proper skill and care in performing the several operations on plaintiff's foot, the testimony of an expert in internal medicine would be no more persuasive than that of a layman who had read and heard what was the proper professional practice.

■ On this point the case is controlled by *Huffman* v. *Lindquist*, 37 Cal.2d 465 [234 P.2d 34], from which we quote (pp. 476, 478):

"A medical expert is not qualified as a witness unless it is shown that he is familiar with the standards required of physicians under similar circumstances. (*Sinz* v. *Owens*, 33 Cal.2d 749, 753 [205 P.2d 3, 8 A.L.R. 2d 757]; *Moore* v. *Belt*, 34 Cal.2d 525, 532 [212 P.2d 509].) ■ It is for the trial court to determine, in the exercise of a sound discretion, the competency and qualification of an expert witness to give his opinion in evidence (*Mirich* v. *Balsinger*, 53 Cal.App.2d 103, 114 [127 P.2d 639]), and its ruling will not be disturbed upon appeal unless a manifest abuse of that discretion is shown. (2 Wigmore on Evidence [3d ed.], § 561, p. 641; *Sowden* v. *Idaho Quartz M. Co.*, 55 Cal. 443, 451; *Sinz* v. *Owens, supra*, 33 Cal.2d 749, 755-756.) ■ The competency of an expert 'is in every case a relative one, i.e., relative to the topic about which the person is asked to make his statement.' (2 Wigmore on Evidence [3d ed], § 555, p. 634.)

■ "The definitive criteria in guidance of the trial court's determination of the qualifications of an expert witness are recognized in *Sinz* v. *Owens, supra*, 33 Cal.2d 749, to rest primarily on 'occupational experience,' as stated at page 753: 'The proof of that standard (the reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of the medical profession under similar circumstances) is made by the testimony of a physician qualified to speak as an expert and having in addition, what Wigmore has classified as "occupational experience—the kind which is obtained casually and incidentally, yet steadily and adequately, in the course of some occupation or livelihood." (2 Wigmore on Evidence [3d ed] § 556, p. 635.) He must have had basic educational and professional training as a general foundation for his testimony, but it is a practical knowledge of what is usually and customarily done by physicians under circumstances similar to those which confronted the defendant charged with malpractice that is of controlling importance in determining competency of the expert to testify to the

degree of care against which the treatment given is to be measured.' ''

Judgment affirmed.

Jones, J. pro tem., concurred.

DOOLING, J.—I concur. If I felt free to do so I would be inclined to hold the expert from Reno sufficiently qualified, but the trend of recent decisions culminating with *Huffman* v. *Lindquist,* 37 Cal.2d 465 [234 P.2d 34], indicates too clearly an opposite view in a majority of the justices of the Supreme Court for me to feel free to do other than concur.

A petition for a rehearing was denied November 8, 1952, and appellant's petition for a hearing by the Supreme Court was denied December 8, 1952. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.