[Crim. No. 1190.   Fourth Dist.   July 17, 1958.]

THE PEOPLE, Respondent, v. THOMAS AGUINAS CHAMBERS, Appellant.

216

Odra L. Chandler and Joseph A. Armstrong for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant-appellant was convicted by a jury of attempted burglary (second degree) on Saturday, January 4, 1958, of a doctor's office at 526 W. 17th Street, in Santa Ana. The doctor left his office about noon on that day and, as best he could remember, the windows were closed

and the screens locked in place. When he returned the following Monday one window was ajar an inch or two, the window crank was not functioning and the screen was lying neatly against the interior wall on the floor. There was a little debris or dirt on the window sill which he did not believe was there previously. A police investigator went to this office on Monday, January 6th and saw particles of dust, grass and twigs inside the window sill, and also found a latent fingerprint on the window glass. He dusted it and "lifted it" to a card and turned it over to the fingerprint identification officer who testified, after photographing it and comparing it with defendant's fingerprints, that in his opinion they were the same.

It appears that on January 4, 1958, about 11 p. m. a police officer was on duty in the vicinity of the doctor's office, saw defendant walking near there, and called to him to stop, but defendant failed to do so. He called a second time and defendant slowed down but proceeded onward. After a third time he stopped and returned to the officer. Defendant was asked as to why he was there and he said he had some car trouble and was looking for a telephone. The officer told him he had heard that there were some pry marks on a doctor's office door, that he was looking for a possible burglar, and would like to search defendant for weapons. He did so but found none. About this time two other officers arrived and asked defendant to accompany them to defendant's car. They found on the passenger side of the front seat a "Hallicraft" radio transmitter capable of receiving police calls. When it was turned on it was set for such calls. In the trunk of the car was found an almost complete set of hand tools. Over the visor on the driver's side of the car was found five torn pages from the classified section of a telephone book showing the addresses of Orange County physicians' offices. Two telephone books and a Santa Ana street map were also found. Defendant was questioned about these and he had no explanation regarding them. A small pry bar was found under the driver's side of the seat. Defendant was arrested and on January 5th was interviewed by another officer. This officer said he talked with defendant and all of his statements were free and voluntary and without promise of immunity. He testified that defendant told him he had some automobile trouble; that as to the torn pages containing the listing of Orange County physicians and their addresses he (defendant) said he

intended to break into a doctor's office but he did not name any specific doctor or his office; that he was going there for the purpose of obtaining enough "barbituates to commit suicide" but that he made no attempt to enter any building. Another officer found two screwdrivers in the grass near the building where defendant was first seen. Defendant was then questioned about these two screwdrivers without showing them to him. Defendant described in some detail the ones the officer found and told him he had armed himself with the two screwdrivers and proceeded to go up and try to burglarize something; that he did not know why he "made an intention to commit a burglary," but he got down from the car, looked around the area, went to his car, unlocked the trunk, looked in his tool box, and armed himself with the two described screwdrivers.

Defendant, at the trial, testified, however, that he left Los Angeles about 8 in the evening with no special destination in mind; that he came to Santa Ana, had mechanical trouble with his car that night and was walking down the alley when the officer approached him; that the Hallicraft radio found in his car was not a transmitter but a receiver and public address system; that he did not leave the screwdrivers in the lot and did not recall telling the officers they were his; that he did not tell the suicide story to the officer, as related, did not make any confessions, was not near the doctor's office, and did not attempt to burglarize it. He said the torn pages from the classified advertisements were used by him because he was looking for an oral surgeon out in the country somewhere because their charges were too high in the city. He admitted prior convictions of felonies for burglary and violation of the Dyer Act.

Defendant's first claim is that the evidence was insufficient to prove the corpus delicti of the offense of attempted burglary, independent of defendant's claimed confession. We see no merit to this argument. The evidence related, together with the circumstances and inferences which could be reasonably drawn therefrom were sufficient to establish the corpus delicti. (*People* v. *Sheeley,* 151 Cal.App.2d 611, 613 [311 P.2d 883]; *People* v. *Davis,* 24 Cal.App.2d 408, 410 [75 P.2d 80].)

Likewise, the claim that the court should have stricken the testimony of the doctor in relation to finding debris and dirt on the window sill because he said he "did not believe" it was there before Saturday night, is without merit. The fact

that evidence is not positive goes to its weight and not to its admissibility. (*Weingetz* v. *Cheverton,* 102 Cal.App.2d 67, 73 [226 P.2d 742] ; *People* v. *Harlan,* 133 Cal. 16, 22 [65 P. 9].)

After the prosecution rested defendant produced a witness whom defendant offered as an expert on fingerprinting. He was examined as to his qualifications and the trial court determined he was not so qualified and on motion struck his testimony on this ground and because the hypothetical question propounded did not involve all of the necessary elements, and no proper foundation was laid. His testimony was to the effect that in examining a latent or partial fingerprint of the left thumb, where the core is missing, and where there are 12 points of similarity and only one or two of dissimilarity, any one point of dissimilarity would almost eliminate the fingerprint identification if it was not a clear print. As to his qualifications to state his opinion, he said he graduated from Fresno State College in 1953; that there he took an elective course in criminology and received a degree therein; that it was a three-unit course requiring three study hours per week for one semester; that he is now an education counsellor with the boys and girls of the junior high school in the dean's office; that he never worked in criminology and had no practical experience with fingerprints since he left college but did read books on the subject and discussed the subject with other people in the field ; and that he did not take unknown prints and made comparison with known prints. The court, at defendant's counsel's request, then stated it would allow him to lay a little better foundation the next day. Thereafter, defendant made no further attempt to amplify his qualifications. The People's expert witness on the subject (and there is no claim that he did not qualify as such) testified and explained in full the characteristics of the comparisons made from the two prints themselves. He felt the 12 points indicated on the chart of them were absolute proof that the two prints were made by the same person. On cross-examination he testified that one point of dissimilarity, because of the presence of a foreign substance, would not indicate it was not the same person; and that from well known authorities, 12 points of similarity is absolute proof. There was evidence of foreign substance in and about the window ledge.

In support of defendant's contention he cites such authority as Fricke on California Criminal Evidence, 3d ed., pp. 141, 142; *People* v. *Horowitz,* 70 Cal.App.2d 675 [161 P.2d 833] ;

*People* v. *Willis,* 70 Cal.App. 465 [233 P. 812] ; and *People,* v. *Phelan,* 123 Cal. 551 [56 P. 424] ; to the effect that although ; a witness has not had any personal experience he may still be qualified to testify on a subject with which he is shown to be familiar as a result of study, reading and education.

However, the general rule is that the trial court, in passing upon the qualification of a witness offered as an expert, has wide discretion, and an appellate court will not disturb its ruling in the absence of a manifest abuse of such discretion. (*People* v. *Horowitz, supra*; *People* v. *Clark,* 117 Cal.App.2d 134, 143 [255 P.2d 79] ; *People* v. *Smith,* 142 Cal.App.2d 287, 292 [298 P.2d 540] ; *Pearce* v. *Linde,* 113 Cal.App.2d 627, 629 [248 P.2d 506] ; *Sinz* v. *Owens,* 33 Cal.2d 749, 753 [205 P.2d 3, 8 A.L.R.2d 757].) It does not affirmatively appear that the trial court abused its discretion here, particularly in view of its added ruling that in stating the hypothetical question defendant's counsel did not include all of the matters considered by the People's expert witness, particularly in respect to the presence or absence of foreign matters in connection with the fingerprints. No prejudicial error resulted.

Defendant next argues that the court committed prejudicial error in failing to give on its own motion an instruction on the law of confessions and the necessity of independent proof of the corpus delicti even though no such instructions were offered by defendant, citing *People* v. *Holt,* 25 Cal.2d 59, 64 [153 P.2d 21] ; and *People* v. *Putnam,* 20 Cal.2d 885, 891 [129 P.2d 367]. The court might well have given such instruction on its own motion and it would have been error to refuse such instructions had they been offered. From the evidence here produced, it does not appear to us that it was prejudicial since the corpus delicti seems to have been sufficiently established without the aid of the claimed confession. Defendant admitted making the statement that he told the officer he was going to go into a doctor's office to get some pills and commit suicide but claims it was not made in a serious manner. It appears that a proper foundation was laid for the admission of the statement; that no objection was made at the time; that no instruction on the subject was offered by defendant; and that no different result would have obtained had such instruction been given. Accordingly, no prejudicial error is shown. (Cal. Const., art. VI, § 4½.)

Some claim is made that the district attorney wrongfully commented on defendant's prior convictions and commented on facts not in evidence. It involved a statement in

the argument that the possible motive of defendant was to enter the office for the purpose of obtaining drugs. Defendant claims since there was no evidence that the doctor kept drugs in his office, a reference to such fact was error. It is also claimed that a reference by the prosecutor in his argument to the jury that the law allowed him to question the defendant as to his previous convictions of felonies, although it did not go to his propensity for committing crimes but merely to determine the likelihood that he was telling the truth, was error. We see no merit to these claims. The prosecutor had a wide range in which to state his views as to what the evidence showed and as to the conclusions that could be drawn therefrom; also to comment on defendant's possible veracity for the purpose of impeachment when he admits the commission of a felony. (*People* v. *Burwell*, 44 Cal.2d 16, 39 [279 P.2d 744]; *People* v. *Hickok*, 120 Cal.App.2d 832 [262 P.2d 30]; Code Civ. Proc., § 2051.)

Judgment affirmed.

Mussell, Acting P. J., and McCabe, J. pro tem.,* concurred.

A petition for a rehearing was denied August 11, 1958, and appellant's petition for a hearing by the Supreme Court was denied September 10, 1958.

---

*Assigned by Chairman of Judicial Council.