[Civ. No. 21634. Second Dist., Div. Two. Nov. 28, 1956.]

WILLIAM RATTRAY et al., Plaintiffs; THOMAS FORSYTHE, Appellant, v. GLEN EDWARD ALBERT et al., Respondents.

[Civ. No. 21635. Second Dist., Div. Two. Nov. 28, 1956.]

GERALD ROCCO et al., Plaintiffs; GEORGE MILO, Appellant, v. GLEN EDWARD ALBERT et al., Respondents.

Robert A. Zarick, Gordon D. Schaber and Anthony J. Scalora for Appellants.

Bauder, Gilbert, Thompson & Kelly for Respondents.

ASHBURN, J.—The appellants in these consolidated cases are George Milo and Thomas Forsythe. They were injured on June 14, 1953, while riding as passengers in a bus operated by defendant Albert on behalf of defendant Pacific Greyhound Lines. The bus was driven into the rear end of a truck and trailer and passengers were thrown out of their seats. A jury awarded plaintiff Milo $25,000, and plaintiff Forsythe $20,000. The proof of negligence was convincingly clear.

The trial judge granted defendants' motion for a new trial in each case, limiting the same to the issue of damages; the order specified insufficiency of the evidence to justify the verdict as the ground of the ruling.

No claim is made that this was not a proper occasion for a limited new trial if any new trial is to be had. (*Clifford* v. *Ruocco,* 39 Cal.2d 327, 329 [246 P.2d 651].) Appellants' contention is that the evidence is in such shape that it was an abuse of discretion to grant a new trial.

The rules governing review of an order granting a new trial for insufficiency of the evidence are stated in *Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 358 [170 P.2d 465] : ''. . . The trial court in considering a motion for new trial is not bound by a conflict in the evidence, and has not abused its discretion when there is any evidence which would support a judgment in favor of the moving party. [Citations.] The only conflict may be the opposing inferences deducible from uncontradicted probative facts. In such case the trial court may draw inferences opposed to those accepted by the jury, and may thus resolve the conflicting inferences in favor of the moving party, for 'It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse the order of the trial court.' [Citations.]''

Concerning an order granting the motion upon the ground of excessive damages (which is essentially an insufficiency of the evidence (*Sinz* v. *Owens,* 33 Cal.2d 749, 760-761 [205 P.2d 3, 8 A.L.R.2d 757])), it is said in *Strosk* v. *Howard Terminal Co.,* 129 Cal.App.2d 797, 802 [277 P.2d 828] : '' 'Whatever may be the rule which should govern the trial judge, it is certain that when his action in granting a new trial on the ground of excessive damages, or requiring a reduction of the amount as the condition of denying one, comes to be reviewed on appeal, his order will not be reversed unless it plainly appears that he abused his discretion; and the cases teach that when there is material conflict of evidence regarding the extent of damage the imputation of such abuse is repelled, the same as if the ground of the order were insufficiency of the evidence to justify the verdict.' (*Doolin* v. *Omnibus Cable Co.,* 125 Cal. 141, 144-145 [57 P. 774]. . . .''

The trial judge has a positive duty to keep the verdict in line with the facts when the matter is presented to him on motion for new trial. The Supreme Court in *Bond* v.

*United Railroads,* 159 Cal. 270, 286 [113 P. 336, Ann.Cas. 1912C 50, 48 L.R.A.N.S. 687], had this to say on the subject: "We have cause to fear that the trial courts sometimes act on the theory that they can shift the responsibility in this matter to the appellate court, and that an excessive verdict can be corrected on appeal. This is a mistake. Our power over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury. [Citations.] Practically, the trial court must bear the whole responsibility in every case." (See also *People* v. *Robarge,* 41 Cal.2d 628, 633 [262 P.2d 14].)

With respect to plaintiff Forsythe it is claimed by appellants' counsel that he, a 37-year-old cabinet maker, was asleep at the time of the accident and suddenly found himself in the aisle lying partly on an old man, partly on his side. He went to his regular physician, Dr. Carlton, on the next day, at which time his neck motion was limited, his back was stiff and he was suffering intense pain. The doctor testified that plaintiff had had a laminectomy of the neck two years before and that on this occasion he was suffering from post-traumatic spinal shock and subluxation of the fourth and fifth vertebrae. After five or six weeks of physiotherapy the patient was referred to Dr. Chapman who put him in traction and a traction brace from October, 1953 to April, 1954. In May of that year plaintiff began to get worse and finally in December went to Dr. Hunter Brown who diagnosed a cervical subluxation on the left side between C-4 and C-5, also a left scalenus anticus syndrome as the cause of his complaint to his left upper extremity. He performed a Crutchfield tong operation and prescribed the wearing of a collar. Plaintiff's special damages amounted to $6,560.10.

Defendants' witness, Dr. Crossen, radiologist, testified that X-rays taken prior to this accident, in 1949, and those taken subsequent thereto disclosed not much difference except an increase in spur formation, "a rather normal physiological reaction to occur in that period of time when we have a neck with some loss of stability." He found no evidence of any compression fracture.

Dr. Dorrell Dickerson, specialist in neurology and neurosurgery, testified on behalf of defendants. He had examined plaintiff in 1950 after a previous injury in which plaintiff claimed to have been struck on the head by a two-by-four plank. He examined him again in December, 1953, and found

him suffering from the same complaints of terrific headaches, pain in the neck, especially on bending and moving. Plaintiff told him of the first accident and his neck bore the scar of a laminectomy operation. Upon the examination in 1953 he manifested the same symptoms in the same places. In this connection Dr. Carlton testified that the first time he saw Forsythe after the accident he said: " 'I feel like I used to. I hurt again.' And he said, 'I haven't felt like this for two years,' and he was scared." Dr. Dickerson further said: "There is no indication of spinal cord or nerve root injury or abnormality. He does not require treatment at this time. From the history it is possible that he could have jerked his neck at the time of the bus accident, but if this did take place he shows no change over the condition I found in 1950."

Dr. Wallace Dodge, a specialist in general and traumatic surgery, examined plaintiff Forsythe on July 7, 1953. X-rays then taken disclosed the previous laminectomy and certain arthritic changes in the neck which were not of recent origin. The witness observed no aggravation of the previous injury and no subluxation or displacement.

The problem with respect to plaintiff Forsythe ob-viously was one of segregating the effects of the former acci-dent and operation from the bus accident of June, 1953, and separately appraising the latter as the proximate cause of existing disability or as exacerbating a previously existing dis-ability. That there was ample room for difference of opinion between reasonable men seems clear.

Concerning the plaintiff Milo, a 46-year-old interior and exterior set director in the motion picture industry, it appears that when the crash came he was thrown into the seat in front of him and rendered unconscious. His nose was in-jured, he had a cut under the eye, his leg was bruised, his back wrenched, and the eyes failed to focus properly. He soon developed an ache in the small of his back when on his feet; also some urinary difficulties. Little was done for him before November. That was about five months after the accident. Awakened with "terrible" pains across his shoulders and down his arms and fingers, he then consulted Dr. George Gering, whose diagnosis was stated as follows: "I felt that Mr. Milo had had primarily a whiplashing type of injury to the neck which had resulted in injury to one or more of the intervertebral discs and had resulted in a compression of the—I believe it was the fourth cervical verte-

brae—and had had a traumatic radiculitis resulting from the injuries to the neck. In other words, the nerve roots emerging from the canals between the vertebrae had been bruised or injured as a result of the injury sustained." He also termed it a compression fracture of C-5 and a partial dislocation or subduxation. Diathermy, injections and traction were used from November to May, 1954; also a collar type device. In January, 1955, Dr. Gering changing the treatment to a new type of injection and traction. Plaintiff's symptoms were pain and numbness and weakness in the arm and hand; dull pain in the small of the back, which continued to the time of trial. Plaintiff's proof of special damages amounted to $2,857.50. He continuously performed his daily work from the time of the accident to the time of the trial.

Dr. Dodge examined Mr. Milo in January, 1954. He found some thickening in the cartilage area of the nose, no tenderness in the neck and no spasm. Also a 50 per cent reduction in rotation of the head from left to right, a condition which might be voluntary or involuntary and the doctor could not determine which; however, there was no spasm to account for it. X-rays were taken and they disclosed the lordotic curve to be normal and showed no compression fracture whatever. Dr. Dodge testified that there were no objective symptims of disability in the neck; that plaintiff may have had a severe strain of the neck in the bus accident but that any evidence of same had disappeared. He said he was sure there was no fracture of the neck, that any injury which plaintiff may have suffered was one to the soft tissues and that the wearing of the collar would do him no good whatever.

Dr. Crossen took and examined X-rays of plaintiff on November 3, 1953; he found a slight downward and forward slanting of the upper tables of the fourth and third cervical vertebrae, a lump or kyphosis on the fifth cervical interspace, which could be due to voluntary or involuntary muscle contraction or spasm. The X-rays showed no compression fracture but some spurs which appeared to have formed over a considerable length of time, arthritic spurs. The lordotic curve was practically normal and there was no evidence of soft tissue reaction in the ligaments which would have been expected if there had been a fracture in June, 1953, the month of the accident.

Plainly, the Milo picture presents a question of fact as to the nature and extent of the injuries suffered in the accident, one upon which reasonable minds might well differ.

We have not undertaken a detailed or comprehensive review of the evidence in support of the conclusion we have reached, namely, that the trial judge did not abuse his discretion in granting a new trial in each case. "It is not within our jurisdiction to decide that the trial judge arrived at an erroneous conclusion as to the credibility of the witnesses and the weight of the evidence. Much less may we go further and hold that his conclusions upon the factual aspects of the case were so palpably erroneous as to render the order an abuse of discretion. Our question is whether a verdict for an amount considerably less than that awarded would have had reasonable and substantial support in the evidence. [Citation.] A smaller verdict would not have been inadequate as a matter of law." (*Ona* v. *Reachi*, 105 Cal.App.2d 758, 762 [233 P.2d 949].) That is true here; a smaller verdict would be justified by the evidence. "The case is merely one in which there is a conflict in the evaluation of evidence. Because we might have found the evidence tilting one way rather than the other is no ground for reversal. The argument made here is one which should have been, and no doubt was, made to the trial court. It is not the province of a reviewing court to present a detailed argument on the sufficiency of the evidence to support the findings where it appears that the question is one purely of determining which side shall be believed. The trial court having determined this with the witnesses before it, the controversy is settled. (*Gillespie* v. *Gillespie*, 121 Cal. App.2d 95, 97 [262 P.2d 607].)" (*Sonkin* v. *Hershon*, 130 Cal.App.2d 491, 492 [279 P.2d 156].)

The order granting a new trial is affirmed in each case.

Moore, P. J., and Fox, J., concurred.