[Civ. No. 21758. Second Dist., Div. Three. Jan. 18, 1957.]

OLIVE MARLOWE, Appellant, v. THE CITY OF LOS ANGELES, Respondent.

Walter H. Young for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Joseph N. Owen, and Weldon L. Weber, Deputy City Attorneys, for Respondent.

SHINN, P. J.—Plaintiff appeals from an order granting defendant a new trial in an action for personal injuries brought pursuant to the provisions of the Public Liability Law, sections 53050 and 53051 of the Government Code. The complaint alleged that defendant negligently failed to keep a public highway within the city of Los Angeles free from an accumulation of water, moss, debris, algae and other slippery substances; that defendant had notice of such dangerous and defective condition and both means and opportunity to remedy the same; that while stepping into the street, which had become slippery due to the alleged condition, plaintiff slipped and fell, suffering a broken ankle. The answer denied these allegations and pleaded the defenses of contributory negligence and assumption of risk. Trial was to a jury which returned a verdict for plaintiff in the sum of $3,500. Defendant's motion for a new trial was granted upon the ground of the insuffi-

ciency of the evidence to support the verdict. The sole question presented on this appeal is whether the court abused its discretion in granting the motion.

There was evidence of the following facts. Ledgewood Street is a public highway in the city of Los Angeles which winds uphill into the Hollywood Hills. Mr. and Mrs. Rex Bartlett lived on the west side of Ledgewood from 1950 until sometimes after plaintiff's accident. Rogerton Street crosses Ledgewood above the Bartlett home. During the time the Bartletts lived at 3035 Ledgewood, water from springs and other sources on Rogerton Street continually flowed down Ledgewood in the gutter along the west side of the street. There were large openings in the curb in front of the Bartlett house leading into an underground conduit. These sometimes became clogged up, impeding the flow of water. The water carried with it moss, algae and other debris which remained in the gutter even when there was no water in the street. Water would gather in front of the house nearly every day and would dry up for a short time only in dry spells. The stream of water was from 6 inches to 3 feet wide. Mr. and Mrs. Bartlett testified in plaintiff's behalf that the gutter was very slippery; Mrs. Bartlett slipped and fell in the gutter on three occasions; Mr. Bartlett slipped and fell four times; a similar misfortune happened to one of their house guests. Mr. Bartlett stated that from 1951 through 1953 he made numerous complaints to various agencies of defendant about the condition of the street, after which crews were sometimes sent to clean up the street. The last complaint made prior to plaintiff's accident was in the spring or early summer of 1953.

There was no sidewalk in front of the Bartlett residence. A retaining wall was built on the curb. The house could be reached either by climbing a flight of steps that led directly from the curb, or by using a walk leading through a vacant lot above the house.

On September 13, 1953, plaintiff visited the Bartletts late in the afternoon. She had visited them on many previous occasions, on the average of once every month or six weeks. She stated that when she drove to their house she usually turned around at the top of the hill, parked her car above the Bartlett house by the vacant lot and crossed it to a side entrance. There was usually less water there and she could always step across it. She did not park there on September 13th because there were cars parked bumper to bumper beside

the lot, which prevented her from reaching the path. She parked her car a little downhill from the house. There was a stream of water flowing in the gutter next to the curb in front of the house. She alighted from her car through the left door, walked around behind it, crossed the water to the curb and in so doing placed both feet in the water and entered the house with wet feet. It was dark by the time plaintiff left. Mr. Bartlett accompanied her out of the house and held her arm as they descended the steps. The lighting was very bad there. When they reached the curb Mr. Bartlett told her to be careful because there was water in the gutter. Plaintiff saw that the stream had widened to three feet. Mr. Bartlett jumped across the stream and told plaintiff to take his hand. She stepped into the flowing water with one foot and as she placed her other foot into the water she slipped and fell, fracturing her ankle. Mr. Bartlett brought a flashlight to see what had happened. He testified that plaintiff had slipped on an accumulation of algae, moss and dirt under the water. There were twigs, leaves, dirt and other debris at the spot where she fell.

In *Williams* v. *Field Transp. Co.*, 28 Cal.2d 696, 698 [171 P.2d 722], the Supreme Court said: ''An order granting a new trial upon the ground of the insufficiency of the evidence to sustain the judgment will not be disturbed upon appeal, unless there be a clear showing of abuse of discretion. 'All presumptions are in favor of the order and it will be affirmed if it is sustainable on any ground. (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338], and cases cited.) The trial court in considering a motion for new trial is not bound by a conflict in the evidence, and has not abused its discretion when there is any evidence which would support a judgment in favor of the moving party.' (*Ballard* v. *Pacific Greyhound Lines*, ante, p. 357 [170 P.2d 465].) Even if the evidence is uncontradicted, the trial judge may draw inferences from it contrary to those made by the jury, and it is his duty to resolve such conflicts in determining whether the issues should be retried. Only when, as a matter of law, there is no substantial evidence to support a contrary judgment, may an appellate court reverse an order granting a new trial. (*Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305 [163 P.2d 689]; *Mazzotta* v. *Los Angeles Ry. Corp.*, *supra.*) '' If there is substantial evidence on any theory that would support a judgment in favor of the party whose motion is granted, the order will not be reversed. (*Gilbert* v.

*Yellow Cab Co.,* 123 Cal.App.2d 782 [267 P.2d 392] ; *Gainey* v. *Gainey,* 119 Cal.App.2d 564 [259 P.2d 984].)

 The verdict implied that the city was negligent in maintaining a dangerous condition in the street; that plaintiff was not guilty of contributory negligence and that she did not assume the risk involved in wading through the water. The order granting a new trial implies that the court concluded that each of these implied findings of the jury was contrary to the preponderance of the evidence. In order to earn a reversal of the order it would be necessary for plaintiff to establish the incorrectness of each of these conclusions of the court. We are of the opinion that the order is sustainable either upon the ground that plaintiff was negligent or that she assumed the risk, and that it is unnecessary to consider the question of the alleged negligence of the city.

There is a difference between contributory negligence and assumption of risk. If plaintiff failed to exercise the degree of care that was reasonably required of her under the circumstances and conditions of the crossing she was guilty of contributory negligence even though she may not have been aware of the extent of the danger. If she had knowledge and appreciation of the danger involved and voluntarily accepted the risk, she alone would have to bear the responsibility for her injury; if she did accept the risk her use of the care that was demanded would not relieve her of that responsibility. (*Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158 [265 P.2d 904].)

It was inferable from the evidence that plaintiff knew the surface of the street at the point where she fell presented a more hazardous condition than would have been found further up the street. This was indicated by the fact that plaintiff usually parked her car higher up the hill and had always been able to step across the water at that point. This was the only reason she gave for her practice of parking well above the Bartlett premises. It would not have been unreasonable for the court to conclude that when she observed the excessive flow of water in front of the house she should have looked for a safer place at which to cross. And it could also have been inferred that when she prepared to leave the house she should have anticipated that there would be a heavy flow of water in the street since she had gotten both feet wet when she crossed it the first time. We cannot hold as a matter of law that plaintiff was free from contributory negligence.

A reason for the order that may be even more sound is that

plaintiff knew the extent of the danger and voluntarily assumed the risk. She had known from previous experience that the street was littered up in front of the Bartlett house and had avoided crossing the gutter at that point. Just before her accident she was aware of the fact tha there was considerably more water to cross than was running at the time she entered the house. Mr. Bartlett told her to be very careful and he held her by the hand. The court necessarily weighed the evidence and the inferences with respect to the extent of plaintiff's knowledge of the conditions and appreciation of the danger. Plaintiff took a chance and lost. All the evidence indicated she knew she was taking a chance. It could be argued that even though she knew she could not cross in complete safety she did not appreciate the extent of the danger, since she had crossed safely a few hours before. And it could be argued, with reason, that she used a considerable degree of care in proceeding deliberately, and accepting the assistance of Mr. Bartlett. But these were arguments properly addressed to the trial court. In order for us to hold that plaintiff did not voluntarily accept the risk we would have to be convinced to the exclusion of every contrary reasonable inference that she believed the risk would be minimal or that there was no danger of injury. Even if opposing reasonable inferences as to the extent of plaintiff's knowledge would be permissible, we would have no authority to reject those drawn by the trial court and substitute those which we might deem equally or even more reasonable. If the jury had found that plaintiff was guilty of contributory negligence or that she assumed the risk of walking through the water the finding would have had substantial support in the evidence and would have warranted a verdict for the defendant.

The order is affirmed.

Wood (Parker), J., and Vallée, J., concurred.