[Civ. No. 25028.   Second Dist., Div. Three.   Aug. 22, 1961.]

ROBERT L. FREDERICK, Appellant, v. NOYES-ROACH CONSTRUCTION COMPANY (a Corporation), Respondent.

Elmer Low for Appellant.

Schell & Delamer and Richard B. Goethals for Respondent.

VALLÉE, J.—Appeal by plaintiff from an order granting defendant's motion for a new trial.

The action is to recover damages for personal injuries sustained when plaintiff fell into a hole dug by defendant.

Plaintiff was employed as a machinist's helper by Barbara Ann Bakery Company, called Barbara Ann. He had worked for Barbara Ann about a year, and worked at night. Plaintiff's duties consisted of cleaning and maintaining machines used to wrap bread and sweet goods. Defendant was engaged in alteration and construction work for Barbara Ann at its plant. Plaintiff knew the construction work was in progress. At the plant there was a yard area with various buildings surrounding it, including the machine shop. In doing its work defendant dug four holes in the yard through the asphalt adjacent to the machine shop for footings for the extension of the wall of the machine shop and had left mounds of earth throughout the yard. The hole into which plaintiff fell was 2 feet wide by 2 feet long and 3 feet deep. There were no covers over the holes and no barricades or warnings of the existence of the holes.

The accident occurred on Monday morning, August 26, 1957, between 4 and 5 a. m. It was dark. Plaintiff began work

at 3 a. m. He knew at that time the yard was filled with dirt. The yard area was bounded on one side by Pasadena Avenue. After performing work in the bakery department, plaintiff crossed Pasadena Avenue to go to the sweet goods building. He went through a gate that led to the yard area which was bounded on the Pasadena Avenue side by a chain link fence. He walked close to the fence to the loading dock in front of the sweet goods building. He cleaned a machine in that building. He then proceeded cater-cornered across the yard to the machine shop. He saw mounds of earth in the yard. He was in the machine shop a few minutes. When he left he walked against the brick wall of the machine shop, hugging it and looking down. When he had gone about 25 feet, he stepped into the hole. The hole was right against the wall. As he walked along he could see the ground and the mounds of earth near where he fell, but he did not see the hole.

There were street lights on Pasadena Avenue along which the yard bordered and lights were on in the basement of the bakery. Stiepani, a fellow workman, had gone to work at 11 p. m. Sunday evening. Shortly after 11 o'clock he left the machine shop to go to the sweet goods building. On the way he fell into one of the holes. Stiepani testified that when plaintiff came to work at 3 a. m. he had a conversation with him about his (Stiepani's) having fallen. "I said to him that I fall in a hole and he should be careful, maybe he don't fall. I believe I said, so he don't fall in the same hole where I fell. Q. You said, 'Be careful about falling in the same hole that you had fallen in'? A. I said, 'Be careful when you go this way. I fall in a hole, so maybe prevent it for yourself,' you know." Stiepani testified further: "Q. Before you fell in the hole, did you know there were any holes in that yard? A. I don't know. I should expect some, but I didn't think about it. Q. Well, you didn't actually see any holes in the yard before you had your accident? A. Well, they made some before. They start to lay off the ground, the marks where they make the holes, because it was cement, but I didn't see them during the night because some of them, they have sand over and some of them not. I didn't think about it. I just thought about it after I fell in the hole."

Plaintiff testified: "Q. It [the yard] was completely loaded with big piles of fill dirt, wasn't it? A. There was quite a few piles there. Q. And you crawled over those piles of fill dirt to get to the machine shop, didn't you? A. I walked over them.

Q. You crawled over them? A. I don't recall getting on my hands and knees, no, sir. Q. Then when you came back out of the machine shop, you decided it was too hazardous to try and climb over the piles of dirt, didn't you? A. Yes, sir. Q. So you decided to go between the piles of dirt and the machine shop wall; is that right? A. Yes, sir. Q. That is because you had had so much trouble crawling over that dirt on the other occasion, isn't that right? A. I'm quite sure that was the reason I made up my mind to try it that way. . . . Q. You did know that the yard was so full of dirt you had to crawl over the dirt when you got through it, didn't you? A. I knew the yard was so full of dirt I didn't want to undertake to go over it, going back the other way. Q. Because you didn't want to have to crawl through it again? A. Well, as I stated before, I didn't crawl, not to my knowledge, but it was a hazardous trip across there. Q. Well, sir, at the time your deposition was taken, on the date heretofore referred to by Mr. Low, at Mr. Low's office, the question was asked of you: 'In other words, you went down on this first time out of the sweetgoods, you walked down and across the lot, was it a direct route to the machine shop?' And you answered, 'The lot had been filled with loads of dirt, fill dirt, big piles of it. I don't know how many piles, but it was completely loaded with big piles of fill dirt and I crawled over these piles of fill dirt to get over to the machine shop and then when I came back out of the machine shop I decided this was too hazardous to try to climb over the piles of dirt, getting back. I had quite a bit of trouble getting over there, so I decided to go between the piles of dirt and the machine shop wall, back to the dock.' " It was stipulated plaintiff had so testified at his deposition. Plaintiff also testified there was an alternate route from the machine shop to the sweet goods building; this would have entailed a 4- or 5-foot jump and going outside and around the bakery premises. Plaintiff's testimony that the alternate route entailed a 4- or 5-foot jump was contradicted by defendant's construction superintendent who testified the area had been graded smooth and the jump was about one foot.

The motion was granted on the ground of insufficiency of the evidence to sustain the verdict.

At the conclusion of plaintiff's case defendant moved for a judgment of nonsuit, which was denied. In the argument of the motion counsel for plaintiff stated there was a question of fact as to contributory negligence.

The rules which govern a reviewing court in the determination of an appeal from an order granting a new trial are, or should be, well-known and need not be repeated. [1] The order of the trial court will be reversed only when it can be said as a matter of law there is no substantial evidence to support a contrary judgment. (*Gibson* v. *Stuck,* 125 Cal.App. 2d 340, 342 [270 P.2d 17]. See the comprehensive statement of this court in *Marlowe* v. *City of Los Angeles,* 147 Cal.App. 2d 680, 683 [305 P.2d 604]; also *Rattray* v. *Albert,* 146 Cal. App.2d 354, 355 [303 P.2d 799]; *Jensen* v. *Western Pioneer Ins. Co.,* 151 Cal.App.2d 570, 573 [312 P.2d 285]; *Hughey* v. *Candoli,* 159 Cal.App.2d 231, 234 [323 P.2d 779].)

We cannot say, as a matter of law, that there was no substantial evidence to support a verdict for defendant. On arriving at work, Stiepani told plaintiff he had fallen into a hole in the yard in going from the machine shop to the sweet goods building. Thereafter, plaintiff walked through the yard. He knew it was filled with dirt and that walking through it was hazardous. Notwithstanding, he later tried to walk from the machine shop a second time. The court may have inferred there was a safe alternative route and plaintiff should have taken it. Whether a reasonably prudent man under the same circumstances would have taken the risk of proceeding inside the yard rather than taking the longer and more circuitous alternate route outside the bakery premises was a question of fact. On the evidence, the court could have concluded plaintiff did not exercise ordinary care for his own safety. It cannot be said as a matter of law that there is no substantial evidence to support a judgment for defendant.

Affirmed.

Shinn, P. J., and Ford, J., concurred.