[L. A. No. 11269. In Bank.—September 25, 1931.]

LOUISE HUTTER et al., Respondents, v. WESLEY J. HOMMEL, Appellant.

W. I. Gilbert for Appellant.

James, Pace, Smith & Younkin and Troy Pace for Respondents.

PRESTON, J.—The judgment is affirmed.

Action to recover damages for alleged malpractice on the part of defendant in so carelessly and negligently rendering surgical and medical treatment to plaintiff Louise Hutter as to cause her pain, impairment of facial appearance and impairment of vision of the left eye. Said allegations of negligence were denied by defendant and he affirmatively pleaded contributory negligence on the part of said plaintiff. The case went to trial and upon conflicting evidence the jury returned a verdict awarding said plaintiff damages in the sum of $10,000 and plaintiff, Frank D. Hutter, her husband, as damages for the loss of her comfort and society, the sum of $465. Judgment was entered accordingly. Defendant appealed.

The questions presented on the appeal do not merit extended discussion. ■ Abundant evidence appears in the record in support of the verdict and judgment, shown in part by the following brief statement: Appellant was a duly licensed physician and surgeon of Los Angeles, experienced in the special treatment of eye, ear, nose and throat diseases. Respondent Louise Hutter was a professional singer in vaudeville and club work, earning $15 or $20 a night at the clubs or in shows, or a straight weekly salary of $75 to $125. On the afternoon of November 3, 1926, accompanied by her husband, she went by appointment to appellant's office for the purpose of having him remove a small cyst located just above her left eyebrow. Despite her nervous condition he required her to wait some fifteen minutes before giving her attention. She testified that he then counseled her not to be nervous and take up too much of his time, as he was in a hurry; that he had her lie on the operating table in her street clothes and wore his street clothes and not a surgical gown; that he protected her merely by placing a towel around her neck; that he then shaved off her eyebrow and injected a hypodermic needle

around the cyst three or four times but failed to cover or protect in any manner the eye below the cyst, merely swabbing the shaven place with cotton or gauze wet with some solution.

She further testified that after commencing the operation appellant was called to the telephone on at least two occasions and returned to the work without cleansing or sterilizing his hands; that he had no assistance for the operation other than that he called on her husband to hold with an instrument a portion of the exposed cyst after the cutting started; that her husband's hands were neither cleansed nor sterilized; that during the operation the cyst was broken and the pus or matter therein ran over the skin and upon respondent's eyelid and eyeball but appellant made no effort to remove the fluid which penetrated the eye other than to wipe the surface of the lid with cotton; that at the conclusion of the operation, which consumed approximately an hour and a half, appellant took several stitches in the eyebrow, bandaged it and directed said respondent to communicate with him the next day; that she passed a painful night, both eyes becoming badly swollen; that she telephoned appellant the next day and he advised her that such was the natural result of the operation and to use hot towels; that during the next twenty-four hours, said respondent endured great pain and suffering and the second day returned to appellant's office.

She further testified that appellant thereupon directed that she be sent to a hospital and that flaxseed poultices be regularly applied; that at the hospital appellant saw her once every day for about twelve days; that after three or four days there, the upper lid of the eye from the brow where the cyst had been removed, commenced to slough and decay; that about eight days after the operation appellant amputated a portion of the affected eyelid by taking a pair of scissors from his pocket and, apparently without sterilization thereof, cutting off a portion of the eyebrow; that appellant failed to draw or fasten the eyelids together with the result that the eyeball was exposed for a period of approximately two months and an ulcer or ulcers formed thereon, which appellant treated by puncturing the ulcer with a small needle treated with nitrate of silver.

Appellant continued to treat said respondent until December 31, 1931, when he referred her to an eye specialist and also a doctor specializing in plastic surgery, from whom at the time of trial she was still receiving treatment. Operations and skin grafts had been performed in an endeavor to rectify the facial impairment and to improve the condition of her eye, but the unfortunate and permanent effects of her experience show all too plainly from photographs appearing in the record. Said respondent, in addition to loss of vision, has been left with a facial disfigurement which prevents her return to stage work. As above stated, there can be no doubt of the sufficiency of the evidence to support the conclusion reached in the court below. Appellant's negligence in failing to use ordinary care and skill to protect said respondent from infection as a result of the operation is clearly apparent from the evidence adduced in her favor.

 Appellant's first contention is that the court erred in overruling his objection to a hypothetical question propounded by respondents which, he claims, contains unfounded assumptions and facts in direct conflict with undisputed evidence. The hypothetical question is several pages in length; appellant's objections extend to but three short sentences or excerpts from it. Examining the record, we find ample, competent evidence tending to sustain every hypothesis contained in the alleged objectionable language. We have also studied the question in its entirety and find that the trial court committed no error in overruling the objection. There would seem to be no justification for a lengthy discussion of this point. As said in the case of *Treadwell* v. *Nickel*, 194 Cal. 243, 267 [228 Pac. 25, 35]: "Considerable latitude must be allowed in the choice of facts as the basis upon which to frame a hypothetical question. Every hypothesis contained in the question should have some evidence to sustain it. But while this is true, it is also the rule that it is not necessary, in framing the question, to include a statement of all the evidence in the case. The question may be framed upon any theory of the questioning party which can be deduced from the evidence, and the statement may assume any facts, within the limits of the evidence, upon which the opinion of the expert is desired. It may omit any facts not deemed by the ques-

tioner material to the inquiry. (10 Cal. Jur., p. 966, sec. 223.) It is the privilege of a party in such cases to assume, within the limits of the evidence, any statement of the facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed, subject to the limitation that the question shall not be unfair or misleading. (Thompson on Trials, secs. 606–610; *People* v. *Hill*, 116 Cal. 562, 567 [48 Pac. 711].) Measured by these considerations, the question here was not objectionable.''

Appellant next contends that the court erred in admitting into evidence, without proper foundation, the testimony of Dr. Kerr, a homeopathic physician and surgeon, as the criterion of the degree of care and skill required of appellant, who was educated in the methods of the allopathic school of medicine. The qualification of a witness to testify as an expert is a matter within the sound discretion of the trial court and its ruling will not be disturbed on appeal unless a manifest abuse of that discretion is shown. (*Darling* v. *Pacific Elec. Ry.*, 197 Cal. 702, 714, 715 [242 Pac. 703], and many cases there cited.) The test is whether a witness discloses sufficient knowledge of the subject to entitle his opinion to go to the jury. No abuse of discretion on the part of the trial court is shown here. Dr. Kerr testified that he had specialized in eye and ear work for over twenty-five years and had been licensed to practice in this state since 1904. He further stated: ''I am familiar with the general treatment under allopathic and any other school of surgical cases. The school cuts no figure in a surgical case.'' He further stated that he had had operations where a cyst in or about the eyeball was dissected out and was familiar with the care and treatment required in connection with such a removal.

We might add that we are cited to no rule obtaining in this jurisdiction and know of none which would preclude a physician trained in one medical school from testifying in a proper case as to the treatment rendered by a physician or surgeon trained in a different school. Such a rule might be promulgated where charges of negligence in a malpractice case are directed toward some special course of treatment to be tested by the general doctrine of a particular school, but it is not applicable to a case of this character where the alleged malpractice is based upon general charges of negli-

gence relating largely to matters of almost common observation within the experience of every physician and surgeon. All schools of medical training require their adherents to exercise care in the handling of surgical work to insure cleanliness, proper sterilization of instruments, treatment of wounds after operation and the taking of precautionary measures to prevent infection, allay the fear of patients and hasten their healing. This expert witness was in our opinion fully qualified to testify as to the propriety of every act of negligence alleged to have been committed by appellant and if his testimony and that of respondents and their other witnesses, together with certain evidence elicited from appellant's own expert witnesses on cross-examination, was believed by the jury, no further proof was needed to warrant them in concluding that appellant was guilty of extreme carelessness and neglect, thoroughly justifying the verdict rendered.

The above discussion is a complete answer to the further claim of appellant that the court erred in failing to give certain requested instructions to the effect that the treatment of a physician and surgeon of one school is to be tested by the general doctrines of his own school and not by the doctrines and practices of other schools. Furthermore, examining the charge of the court as a whole, we find that the substance of the refused instructions was contained in other instructions given. It is clear that appellant suffered no prejudice in this respect.

Lastly, appellant contends that the evidence was insufficient in law to justify submission to the jury of the question of whether or not he failed to bring to the case that degree of ordinary care and skill usually possessed and exercised by physicians and surgeons in good standing practicing in this locality under similar circumstances, such proof being a vital element of a malpractice case. This contention is also answered by the above discussion and we shall not review the evidence further. As above stated, we have examined the record at length and have found evidence, abundant and competent, supporting the action of the court below in every respect; hence we have unhesitatingly ordered an affirmance of the judgment.

Curtis, J., Shenk, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.