[Civ. No. 9171.  Second Appellate District, Division One.—August 2, 1935.]

HERBERT M. ELLINWOOD, Respondent, v. FRANK J. McCOY, Appellant.

Barry & Boehler, Warren Lee Kinder and Oliver O. Clark for Appellant.

Edwards & Taylor and Harvey D. Taylor for Respondent.

EDMONDS, J., *pro tem.*—In an action for malpractice, a jury returned a verdict for $7,500 in favor of the respondent and against appellant Dr. Frank J. McCoy. The appeal from the judgment entered thereon presents principally the question whether or not the evidence is sufficient to sustain the verdict, although other points on appeal are urged.

The evidence shows that on December 14th respondent consulted Dr. McCoy, licensed to practice as a drugless practitioner, for treatment of gonorrhea. On the occasion of this first visit, Dr. McCoy inserted an ultra violet ray orificial applicator, also called a cold quartz rod, into respondent's urethra and left it there with electric current turned on for a period of seconds. Appellant also placed a diathermy electrode in respondent's rectum, with a metal plate near the small of the back. Electrical current was then applied, and the electrode heated to 102 degrees Fahrenheit. The treatment of the urethra with the cold quartz rod was given on four later days, the last on December 20th, by Dr. James E. Anderson upon the direction of appellant. Diathermy treatments were also given by Dr. Anderson during this period. Dr. Anderson, the record shows, was one of a number of chiropractors working for appellant in his offices.

On the night of December 20th respondent consulted another physician who found him in a condition where it was impossible for him to urinate. Respondent was taken to a hospital where for twelve hours various means were used in an effort to open up the urethra so that respondent could urinate. When there was such an accumulation of urine that two surgeons felt that respondent was in great danger, an abdominal operation was performed and the bladder drained by means of a tube. This tube was kept connected through the abdominal incision until the urethra healed sufficiently to allow normal flow of urine through it, which took about three weeks.

Dr. Dowey, one of the surgeons who operated upon plaintiff, testified that respondent before the operation was suffering from acute urethritis of apparent traumatic origin from mechanical instrumentation; thermal injury of ultra-violet origin; and acute cystitis, both bacterial and traumatic. He also stated that after the operation a good deal of tissue within the urethra sloughed out in pieces from the size of a small flake to perhaps one-half to three-quarters of

an inch across. This indicated to him, he explained, that the tissue within the urethra and a portion of the bladder had been so traumatized or injured that it died and sloughed off, and that respondent had suffered third degree burns of both the urethra and bladder. In further explanation the doctor stated that "the phenomena which presented themselves clinically in his case were not characteristic of a noncomplicated gonorrheal urethritis. They were characteristic of a case which had been traumatized through brutal instrumentation."

Dr. Willis, the other attending surgeon, testified that during the operation, an examination of the bladder showed "the so-called trigon area—a triangle shaped space between the urethral orifice and the bladder neck—was markedly inflamed and engorged" with second degree burns; and that after respondent urinated normally the urine contained a heavy deposit of necrotic tissue. He also gave as his opinion "that the retention of urine was due to photothermic destruction of the lining membrane and inflammation of the cavernous urethral structure from prolonged application of the ultra-violet light".

In addition to these witnesses respondent called Dr. McKinney, a specialist in urology, who, in response to a hypothetical question embodying the treatment of the respondent by the appellant and Dr. Anderson, expressed the opinion that respondent was too vigorously treated and burned with the diathermy or the violet ray.

From the testimony given by Dr. Dowey and Dr. Willis of the condition of respondent's penis after the treatment given by appellant, the jury was thoroughly justified in finding that respondent had suffered severe injury, and their description of what they found during the operation is further evidence of even more convincing character. The duty which the appellant owed to his patient has been thus stated: "A practitioner is, however, required by law to use the same degree of care, diligence and skill in the treatment of his patients as is possessed and used by prudent, skillful and careful practitioners of the same school practicing in the vicinity." (*Howe* v. *McCoy,* 113 Cal. App. 468, 470 [298 Pac. 530]. See, also, *Hesler* v. *California Hospital Co.,* 178 Cal. 764 [174 Pac. 654].) If the condition of the respondent was, as testified to by Dr. Dowey, a condition which in itself indicated that this was "a case which had

been traumatized through brutal instrumentation", it can hardly be said that the appellant used the care and skill required by the law. And the jury was warranted in finding accordingly if they believed the testimony.

■ Concerning appellant's claim that the testimony of the physicians called by the respondent should have been excluded because they are not drugless practitioners, the following is pertinent and determinative of the point: "We might add that we are cited to no rule obtaining in this jurisdiction and know of none which would preclude a physician trained in one medical school from testifying in a proper case as to the treatment rendered by a physician or surgeon trained in a different school. Such a rule might be promulgated where charges of negligence in a malpractice case are directed toward some special course of treatment to be tested by the general doctrine of a particular school, but it is not applicable to a case of this character where the alleged malpractice is based upon general charges of negligence relating largely to matters of almost common observation within the experience of every physician and surgeon." (*Hutler* v. *Hommel,* 213 Cal. 677, 681 [3 Pac. (2d) 554].)

■ Appellant also complains of the following instruction: "I instruct you that negligence on the part of a drugless practitioner or chiropractor consists in his doing something which he should not have done, or in omitting something which he should have done." This instruction omits the very necessary element of the standard of care by which the act of the practitioner is to be judged. However, in other instructions the court fully presented the law to the effect that there are different recognized methods of treatment for gonorrhea; that the appellant was not required to use that method recognized or approved by practitioners of medicine or surgery; that he was only required to possess and use ordinary skill; and that no recovery could be had against him, regardless of the outcome of his treatment, unless he failed to have or use the ordinary skill of like practitioners in the same locality. In a somewhat similar situation where the instructions given in a malpractice case were under consideration, the Supreme Court said: "When the instruction complained of here is read in connection with and in the light of the other instructions in the case, of which the defendant does not complain, it cannot be said that the instruction, though manifestly

erroneous, was prejudicial to a degree which would require a reversal of this case." (*Hall* v. *Steele*, 193 Cal. 602, 609 [226 Pac. 854].) The same rule applies here.

Also, there was no error in giving to the jury an instruction concerning the duty of one holding himself out as a specialist. There was evidence to the effect that the appellant represented himself to be a specialist, and if the jury believed this evidence, they were entitled to judge his conduct by the standard of care stated in the instruction.

The other points raised by the appellant are disposed of by what has been heretofore stated.

The judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 30, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 30, 1935.