## MARY F. HAROLD ET VIR *v.* H. MELVIN RADMAN

[No. 721, September Term, 1975.]

*Decided April 13, 1976.*

The cause was argued before MORTON, MENCHINE and MASON, JJ.

*Joseph F. Lentz, Jr.* and *Richard B. Jacobs* for appellants.

*John H. Bolgiano,* with whom were *Smith, Somerville & Case* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Mary F. Harold, individually, William H. Harold as her husband, and both as husband and wife jointly, (appellants) sought damages for permanent injury, medical expense and loss of consortium respectively against Dr. H. Melvin Radman (appellee) for alleged medical malpractice in performing a hysterectomy operation and in subsequent aftercare. At trial before a jury in the Baltimore City Court, verdicts in favor of the defendant were directed by the trial judge at the end of the plaintiffs' cases. Appellants have appealed from the judgments thereafter entered.

The narrow issue presented in this appeal relates to the refusal by the trial judge to permit Dr. Harold Hirsh to testify as an expert witness.[1] In consequence of the trial court's rejection of the proffered witness, the appellants were left without expert testimony in the medical malpractice case. They maintain that the ruling of the trial judge constituted reversible error.

Prior to the rejection of the proposed witness a *voir dire* examination had been directed to the qualifications of the proffered witness.

## The Voir Dire Examination of the Proposed Witness

On direct examination it was shown that the witness graduated from the Georgetown Medical School in 1942, and trained as an intern and resident for three years at the Gallinger Municipal Hospital, now known as the District of Columbia General Hospital. Thereafter, he became a Fellow in Medicine at that institution. He has been engaged in the practice of medicine since 1947. In 1950 he was certified by the Board of Internal Medicine. Certification in Internal Medicine meant that he had completed five years of training

---

1. The rejection of the witness did not turn upon any alleged lack of knowledge of a required standard of care. *See*: Shilkret v. Annapolis Emergency Hospital, 276 Md. 187, 349 A. 2d 245 (1975). Rather, the trial judge's decision turned upon his finding that the witness "was not qualified as an expert in this particular specialty."

and had passed written and oral examinations and was allowed to practice the most skilled kinds of problems in medicine.

At the time of trial he was a Clinical Associate Professor of Medicine at Howard University School of Medicine. His teaching duties at Howard University School of Medicine occupied him from two to six months annually.

He had written about ninety medical articles and was the author or contributor to five medical text books. His writing primarily was in the area of infections and diseases of the urinary tract or bladder and the use of antibiotics.

He is a consultant of the Department of Health, Education, and Welfare, and in the past had been a consultant for the Food and Drug Administration, and the United States Public Health Service.

At the time of trial he was engaged as a consultant to the Armed Services Institute of Pathology with respect to medical problems in the Armed Services, the Veterans Administration and the National Institutes of Health. His duties for the Armed Services Institute of Pathology required the review of cases for determination whether there had been violations of medical standard of care in any of the Armed Services.

In the course of his practice, he had had privileges at Suburban Hospital; Holy Cross Hospital in Montgomery County, and Prince George's County Hospital. He had been Chief of Staff for a home for the aged located in Montgomery County.

At one hospital he supervised the treatment of some thirty to sixty ward patients who were under the day to day care of two interns and a resident. This duty required him to review their diagnoses and treatment and note the progress of the patients until discharge.

He declared that he was familiar with the standard of medical care and skill exercised or expected to be exercised by physicians and surgeons engaged in the field of gynecology and urology in the Baltimore area.

Cross-examination developed that at the trial of the case

his practice of medicine was confined primarily to consultation. He acknowledged that he had seen but two private patients within the month preceding trial. He acknowledged that his last operating room activity had been about one year before the trial, when he was in attendance for the purpose of teaching students during an operation by a surgeon. His last association as non-operating member of an operating team performing a hysterectomy occurred about three years prior to trial.

The witness acknowledged that he had never personally conducted any kind of significant surgery and that in the conduct of his specialty of internal medicine he would call in a surgeon for any recommended surgical procedures.

His cross-examination then continued with the following questions and responses:

"Q Have you ever done a hysterectomy?

A No, sir.

Q Do you feel yourself qualified to do the repair of a fistula?

A Personally?

Q Yes.

A No, sir.

Q Do you feel yourself qualified to do a hysterectomy?

A No, sir.

Q And isn't it true that an internist who is not a surgeon, when such procedures are deemed necessary, the internist consults or calls in the surgeon and follows the advice and procedure of the surgeon?

A I don't think I would like to use the term follows. I think that we have a — come to an understanding as to whether the operation has to be done, and what kind of operation, and on many occasions, depending on the condition of the patient, and I have always participated with the surgeon or sometimes even by myself

in explaining to the patient the need for it, because even before you start, you call a surgeon, and you have to explain to the patient why you are calling the surgeon, so you have to know the surgical indications, and I think that the internist also has a duty to his patient, and that his patient has to know what the complications are, and what will happen if those complications — show that from a technical point of view, no, I can't do the technology, but from the point of view of knowing whether the surgery is indicated, what the problems are, what complications could be expected, what should be done with the complications, I think that I know those as well as any surgeon, particularly in this kind of operation, which is so relatively common."

His redirect examination on *voir dire* included the following:

"Q  Doctor, have you ever diagnosed the need for a hysterectomy?

A  Many times.

Q  Have you ever diagnosed fistulas?

A  On a number of occasions, yes.

Q  Are you familiar with the procedure to repair a fistula?

A  You are talking — where, sir?

Q  Bladder or —

A  Yes.

Q  And are you familiar with the procedure used by a surgeon in hysterectomys?

A  Yes, sir.

Q  The reason you have not operated in Maryland, or any other place, is because you are not a surgeon; is that right?

A  That is true, sir.

Q Are you familiar with the complications which may or do arise in hysterectomys and fistulas?

A Yes, sir.

Q Are you familiar with what to do when these complications arise?

A Yes, sir.

(The Court) But did you, yourself, do it?

(The Witness) No, sir.

By Mr. Lentz:

Q You are not licensed to do it?

A Well, in truth, I am licensed, but I am not trained to do it, and I would not undertake it, because I am not equipped or qualified to do it. My license actually is as a physician-surgeon, but my own self-discipline and my profession, which is what does not allow me to do it."

The trial judge then ruled that the doctor was not qualified to testify as an expert witness. He said:

"Well, gentlemen, the Court was hopeful, as it always is in medical malpractice cases, in particular, never having reached the point where he has got to make an official ruling on an important part of the case, and unfortunately I have been confronted with that issue, and I have heard argument of counsel. Mr. Lentz argued that Dr. Harold Hirsh is qualified to give an opinion in this case, and that Mr. Bolgiano questioned seriously the qualifications of the physician to give an opinion on surgical procedures. *It is my conclusion in this case that Dr. Harold Hirsh is not qualified to give an opinion as to pass judgment upon a gynecologist and surgeon, who has to face disclaim for malpractice and* for the following reasons: Dr. Hirsh has testified that while he teaches in Georgetown Medical Center and Howard University and is a clinical professor, that he is a board certified internist, *his testimony is very clear that*

*he is not a gynecologist, nor a urologist, and indeed he has never performed any type of surgery at all during his entire medical career.* The only times that he has been in the operating room were as an observer together with his students, and as an internist, either in the course of surgery or after surgery, to take care of a patient medically, but not surgically.

"*He has said that he has never performed any surgery. He has never had a knife in his hand, and that he is familiar with the infections or urinary tract and the bladder, but at no time has ever performed any surgery of any kind, let alone in the specialty of gynecology and urology.*

"So, that for me to permit Dr. Hirsh to give an opinion as an expert in the field in which he is indeed not an expert, would simply permit this jury to conjecture and to speculate as to the issue of negligence, or not on the testimony of Dr. Hirsh. I don't know what Dr. Hirsh's opinion would be, but it does seem to me that *I cannot permit him, because, in my opinion, he is not qualified as an expert in this particular specialty, and for that reason, or these reasons, I will grant the motion to exclude his testimony* and any opinion which may be forthcoming. I will say, too, that I am making this decision not lightly, but after a great deal of soul-searching and full consideration of it." (Emphasis added.)

### The Law

In II Wigmore, *Evidence,* § 561 (3d Ed. 1940) it is suggested that the issue of expert witness qualification should be the exclusive prerogative of the trial judge:

"Looking at the complication of facts often entering into a witness' competency and best understood by the trial judge alone, — looking at the comparatively trifling character (in relation to all

the issues of a trial) of the topics over which controversy arises, — looking at the ample and sure safeguard of cross-examination to reveal the witness' real qualifications, — looking at the injustice of requiring the busy judges of the Supreme Courts to investigate such trifles, — in view of all these considerations, it cannot be doubted that the rule of the future ought to be:

*The experiential qualifications of a particular witness are invariably determined by the trial judge, and will not be reviewed on appeal.*"

It is manifest, however, that Maryland does not subscribe to that suggested course. In *Marder v. Baltimore*, 232 Md. 299, 192 A. 2d 512 (1963), while reiterating the view that the issue is largely discretionary with the trial judge, it was said at 303 [514]:

"The rule that the determination of the competency of an expert witness as to whether or not he is qualified to testify is largely within the discretion of the court is too well fixed in the law of this State to require citations. This Court will not normally reverse the court below in its ruling on the competency of an expert witness unless the discretion has been abused."

The Court, after pointing out that the trial judge's refusal to allow the expert witness to express an opinion created a condition where the appealing parties "were left with practically no evidence supporting their side of the controversy," said at 304 [514]:

"We think on the whole the record before us discloses that the trial judge should have exercised his discretion in determining the witness's qualifications so as to allow him to express an opinion as an expert in order that the jury might consider it. Such opinion could have been of some help to the jury in determining its award of compensation, giving the opinion such weight as in

the judgment of the jury it felt it merited. *Having reached this conclusion the judgment must be reversed and the case remanded for a new trial.*" (Emphasis added.)

To the same effect is *Stewart v. Baltimore City,* 250 Md. 569, 244 A. 2d 231 (1968), wherein the Court of Appeals, again recognizing the "frequently affirmed principle that the competency of an expert witness is usually left to the discretion of the trial court" (581 [238]), nonetheless reversed because " . . . we think the lower court was overly exacting in the qualifications it felt that an expert should meet before being competent to testify : . . ." (582 [238]).

We are aware of no Maryland appellate decision relating to the precise issue presently before us, namely: propriety of the rejection of a medical witness in a surgical malpractice case when grounded upon suggested lack of professional qualifications.

In an annotation in 46 A.L.R.3d 275, *et seq.,* entitled: "Medical Malpractice: Necessity and Sufficiency of Showing of Medical Witness' Familiarity With Particular Medical or Surgical Technique Involved In Suit," it is stated, *inter alia,* that decisions in other jurisdictions suggest three differing views upon the subject, namely:

1. That the proposed witness must have personally performed the technique in issue; (§ 3 of Annotation, p. 279, *et seq.*)
2. That the proposed witness must have familiarity with the technique in issue; (§ 4 of Annotation, p. 282, *et seq.*) and
3. That the proposed witness need not be familiar with the technique.[2] (§ 5 of Annotation, p. 286, *et seq.*)

*See also* 31 A.L.R.3d 1163.

---

**2.** The single case cited in the annotation as adopting this view was Quinley v. Cocke, 192 S.W.2d 992 (Tenn. 1946). We do not read the case as announcing so broad a view, but, in any case, we reject such a view and shall otherwise not discuss it.

*The View Requiring Showing of Personal
Performance of the Technique*

Cases seemingly tending to such a view include:

*Moore v. Belt*, 212 P. 2d 509 (Cal., in Bank, 1949), wherein it was said at 513:

> "A medical expert is not qualified as a witness unless he is shown not only to have the required professional knowledge, learning and skill to express his opinion, but is also familiar with the standards required of physicians under similar circumstances. Sinz v. Owens, supra, 33 Cal.2d at pages 753 et seq., 205 P.2d at page 5. A party is entitled to examine an expert witness as to his qualifications and experience so that the full weight to be accorded his testimony will become apparent. Salmon v. Rathjens, 152 Cal. 290, 299, 92 P. 733. But in view of the witness' admitted lack of practice in urology the extent of the examination as to his qualifications in relation to the subject matter of his opinion was within the sound discretion of the trial court.

\* \* \*

> "It is urged that the trial court unduly limited the plaintiff's examination of his expert witness. It appeared from the testimony of this witness that he had practiced as an autopsy surgeon for twenty-nine years, that he did not practice urology, did not conduct genito-urinary examinations in the diagnostic or treatment fields, and did not know the methods of practice therein, but that he had learning and knowledge of the anatomy and of infections in relation to the genito-urinary system." [3]

---

3. A dissenting Justice in Moore v. Belt expressed the view that the majority decision was overly restrictive, saying at 523:

"The majority opinion states that the exclusion of Dr. Webb's

*Harris v. Campbell*, 409 P. 2d 67 (Ariz. App. 1965), wherein the proffered witness: " . . . was not a specialist in the field of gynecology or obstetrics and had not practiced in any of the offices of the specialists in Phoenix specializing in the field of gynecology and obstetrics. He . . . had no direct way of knowing 'what the standard of practice is for gynecologists and obstetricians in Phoenix, Arizona, or was in 1958.' " (p. 72)

Under those circumstances the Court held at 73:

> "A reading of the record does not show that trial court abused its discretion in not permitting the witness to testify." [4]

Appellee cites *Peterson v. Carter*, 182 F. Supp. 393 (W.D. Wisc. 1960); *Carbonneau v. Lachance*, 29 N.E.2d 696 (Mass. 1940); *DiFilippo v. Preston*, 173 A. 2d 333 (Del. 1961); *Harris v. Campbell, supra; Hunt v. Bradshaw*, 251 F. 2d 103 (4th Cir. 1958); *Huttner v. MacKay*, 293 P. 2d 766 (Wash. 1956); *Peters v. Gelb*, 303 A. 2d 685 (Sup. Ct. Del. 1973), affirmed 314 A. 2d 901 (1973); and *Pearce v. Linde*, 248 P. 2d 506 (C.A. Cal. 1952) as authority for the proposition "that the trial court properly exercised its discretion in refusing to allow

---

testimony was not erroneous for the reason that 'A medical expert is not qualified as a witness unless he is shown not only to have the required professional knowledge, learning and skill to express his opinion, but is also familiar with the standards required of physicians under similar circumstances.' This statement and the cases cited in its support are inapplicable to the present case. It may be conceded that a medical expert called to testify that a defendant did not exercise that degree of care and skill ordinarily exercised by members of the profession under similar circumstances must be familiar with the standard of care prevalent among the members of the profession. A medical practitioner who testifies as to the standard of care ordinarily exercised by a specialist in a given case must either be a specialist himself *or must show familiarity with the methods of such specialists*." (Emphasis added.)

4. Although in surface appearance this case seems to place it within the more restrictive view, a careful reading of the opinion would seem to indicate that the ultimate holding was grounded upon the acknowledged lack of knowledge of medical standards. The Court cited with apparent approval Carbone v. Warburton, 91 A. 2d 518 (N.J. App. 1952) (a leading case *contra*) which will be fully discussed herein *infra*.

opinions from non-qualified physicians against surgeons."
(Appellee's Brief, p. 5).

We do not believe the above cited cases declare so broad a
view. The following quotation from *Hunt v. Bradshaw,
supra,* will serve to explain our belief. In *Hunt* it was said at
107:

> "[H]ere, the Judge acted within the limits of his
> allowable discretion. *He did not disqualify Dr.
> Walker as a matter of law because he was not a
> specialist in surgery* but, after weighing the
> witness' professional background and qualifi-
> cations, reached the conclusion that he had not
> shown such familiarity with the subject upon
> which he was being interrogated as to entitle him to
> express the opinion called for. Reading the
> testimony in all its detail, we cannot say that the
> District Judge acted unreasonably in restricting the
> scope of Dr. Walker's testimony to radiological
> matters. The general rule, adhered to by the
> Supreme Court of North Carolina and this court as
> well, is that the qualification of a witness to express
> an expert opinion should be left to the sound
> discretion of the trial judge." (Emphasis added.)

In the discussion of this view in the annotation in 46
A.L.R.3rd, *supra,* the author had said, *inter alia,* at 279, *et
seq.*:

> "§ 3. *View that witness must have personally
> performed technique*
>
> In a series of California cases, the courts have
> taken the 'occupational experience' test set forth by
> Professor Wigmore and have developed it, with
> respect to medical experts, to the point where it is
> apparently now required in California that such an
> expert, in order to qualify as an expert witness in a
> malpractice action not involving a unique or
> extremely rare technique, must show that he has
> personally performed the particular medical or

surgical technique that the defendant was alleged to have negligently performed.

Thus, while earlier cases appeared to recognize that a medical expert's acquaintance with the particular technique involved in a malpractice case need not be derived from personal performance of the technique, the requirements were tightened in subsequent cases requiring 'occupational experience' with the particular medical or surgical technique in question." [5]

However, in a recent decision, *Brown v. Colm*, 522 P. 2d 688 (1974) the Supreme Court of California, In Bank, clearly altered the California rule, saying at 692:

"The unmistakable general trend in recent years has been toward liberalizing the rules relating to the testimonial qualifications of medical experts. Thus, whereas a number of earlier cases held that a physician of necessity must possess the skill ordinarily practiced only in the *same* locality (see, e. g., Trindle v. Wheeler (1943) 23 Cal.2d 330, 333, 143 P.2d 932), only six years later this requirement was relaxed so that a physician was deemed qualified as an expert if he could testify to the practice in a *similar* community. (Sinz v. Owens, supra, 33 Cal.2d 749, 756, 205 P.2d 3.) Some early cases were unbending in requiring expertise as to the precise injury involved in the litigation, as, e. g., not permitting an autopsy surgeon to testify on urology (Moore v. Belt (1949) 34 Cal. 2d 525, 212 P.2d 509). Other authorities, however, have permitted variations, as, e. g., a pathologist was qualified to testify as to causes of aseptic necrosis (Agnew v. City of Los Angeles (1950) 97 Cal.App.2d 557, 566, 218 P.2d 66); an expert in otolaryngology

---

5. The author made reference to Moore v. Belt, *supra*; Bennett v. Los Angeles Tumor Inst., 227 P. 2d 473 (D.C.A. Cal. 1951); Huffman v. Lindquist, 234 P. 2d 34 (Cal. 1951) and Pearce v. Linde, *supra*, (also cited in appellee's brief) as supportive of the stated position.

to testify regarding plastic surgery (Mirich v. Balsinger (1942) 53 Cal.App. 2d 103, 127 P.2d 639); a homeopathic physician and surgeon to testify on the degree of care required of a physician educated in the allopathic school of medicine (Hutter v. Hommel (1931) 213 Cal. 677, 681, 3 P.2d 554); a pathologist and professor of pathology to testify on the subject of gynecology (Cline v. Lund, supra, 31 Cal.App. 3d at p. 766, 107 Cal.Rptr. 629).

"There are sound and persuasive reasons supporting this trend toward permitting admissibility more readily, rather than rigidly compelling rejection of expert testimony. It is obvious that an overly strict standard of qualification would make it difficult and in some instances virtually impossible to secure a qualified expert witness. In the present case, for example, it is doubtful that plaintiff could produce a medical doctor who was qualified to testify as to the standard of care in view of the rarity of the operation and the fact that the surgery had occurred in a comparatively small and isolated community 23 years prior to trial.

"On the other hand, if the threshold test of general testimonial qualification is found to be met and the witness is permitted to testify on direct examination, he is subject to as penetrating a cross-examination as the ingenuity and intellect of opposing counsel can devise. This inquiry may challenge not only the knowledge of the witness on the specific subject at issue but also the reasons for his opinion and his evaluation of any written material upon which he relied in preparation for his testimony. (Evid. Code, § 721.) Further, a defendant is free to argue that the witness' testimony is not entitled to acceptance or credibility because he lacks personal acquaintance with the subject at the time the alleged negligent act occurred, and defendant may produce his own

witnesses in rebuttal. These measures are more than adequate to protect a defendant's interests.

"It is true, as defendant contends, that the question whether a witness qualifies as an expert is a matter addressed in the first instance to the sound discretion of the trial court. (Sinz v. Owens, supra, 33 Cal.2d 749, 755, 205 P.2d. 3.) It is also elementary, however, that the court will be deemed to have abused its discretion if the witness has disclosed sufficient knowledge of the subject to entitle his opinion to go before the jury. (Seneris v. Haas, supra, 45 Cal.2d 811, 833, 291 P.2d 915.) Indeed, the exclusion of the sole expert relied upon by a party because of an erroneous view of his qualifications is, in a case where expert testimony is essential, an abuse of discretion as a matter of law requiring reversal."

### The View Requiring Showing of Familiarity With the Technique

A leading case espousing this view is *Carbone v. Warburton, supra,* (see note 4). The trial judge, on objection, declined to allow a general practitioner to testify as an expert witness in a malpractice action against an orthopedic surgeon. After declaring that mere licensing as a physician, without further proof of knowledge of the particular subject may not qualify a medical witness to testify as an expert, the Court said at 522:

" . . . we hold that in considering the competency of a proffered expert medical witness who is a licensed physician, a trial court should have regard for the proof difficulties . . . , and to the fundamental concept that where a right exists the law would be deficient if there were no remedy for violation of that right, and consequently should exercise his discretion liberally toward the acceptance of the qualifications. Where there is any reasonable evidence of qualification in addition to the license,

he should be permitted to testify. Cross-examination will expose any weakness in or limitations on his knowledge and experience. And then the weight to be accorded his testimony may be left where it has rested traditionally, namely, with the jury."

The Court added at 523, *et seq.*:

"On cross-examination it appeared that while he had neither treated nor observed the treatment of fractures in 1946 he knew what the method of treatment was and he knew what was being done in hospitals in 1946 for fractures. This knowledge came from his reading and study of books and medical journals. On being asked, he furnished the names of the authorities whose books he had read on the subject. These statements stand unqualified and uncontradicted.

"As we already pointed out, a person can become an expert through actual experience or study or through both. This record presents a witness of substantial educational background in his profession and many years of practice. While it is true that he is not a specialist in the field of orthopedics he asserted knowledge of the method of treatment of fractures both in hospitals and generally and supported the assertion by the specific references to which we have adverted. In refusing to allow him to testify, in effect the trial court declared that he had no qualifications that would render him competent as an expert. In the light of the evidence on the subject and the requirement of liberal appraisal thereof, the rejection of the witness was erroneous and constituted a mistaken use of discretion. In the situation presented he should have been permitted to testify and the weight of his statements left for the jury to determine."

Many other cases have adopted the same view. Examples

are: *Pridgen v. Gibson*, 139 S. E. 443 (N.C. 1927), where the Court said at 445-46:

> " . . . if, as in substance he [the witness] said, he could form an opinion satisfactory to himself upon assumed facts as to the proper method of treating the eye, the mere circumstance that he was not a specialist in this particular field would not as a matter of law disqualify him from expressing an expert opinion. If the ruling had been put upon the broad ground that his professional knowledge and training were not such as to satisfy the court of his competency to testify as an expert witness, it is not improbable, in the absence of abuse or palpable error, that a case of 'irreviewable discretion' would have been presented; but to say that a witness may not express an expert opinion unless he can qualify as a specialist raises an entirely different question."

*Brisendine v. Hunt*, 158 S. E. 469, 471 (C.A. Ga. 1931), wherein it was said:

> " . . . if the witness had been practicing medicine for twenty-nine years, and was 'a practicing physician and surgeon,' and had numerous patients who had been operated on for internal hemorrhoids by reputable surgeons under his direct supervision and treatment, we are of the opinion that the witness was competent to testify as he did, over the objection interposed. It was not necessary for him to qualify as a specialist in surgery."

*Baerman v. Reisinger*, 363 F. 2d 309 (D.C. Cir. 1966), wherein a general pratitioner had been rejected as a witness in a malpractice case against a cardiologist "on the ground he was not shown to be an expert in cardiology." In reversing, Judge Burger (now Chief Justice) speaking for the Court, said at 310:

> "It is settled law that '[a] physician is not incompetent to testify as an expert merely because he is not a specialist in the particular field of which

he speaks.' Sher v. De Haven, 91 U.S.App. D.C. 257, 262, 199 F.2d 777, 782, 36 A.L.R.2d 937 (1952), cert. denied, 345 U.S. 936, 73 S.Ct. 797, 97 L.Ed. 1363 (1953). The training and specialization of the witness goes to the weight rather than admissibility of the evidence, generally speaking."

*Hawkins v. Schofman*, 204 So. 2d 336 (D. Ct. of App. of Fla. 3rd Dist. 1967) where it was said at 338:

"We hold, as contended by appellants, that the trial court committed error in excluding the testimony of Dr. McIntyre.

\* \* \*

"The trial court held Dr. McIntyre was unqualified to give opinion testimony concerning the operative procedure involved here because he had had no personal experience in performing such an operation. Regarding his qualifications it was shown that Dr. McIntyre had received a degree as a medical doctor from Columbia University in 1944, had been a practicing physician for twenty-two years, had served in the field of neurology at various named hospitals, was licensed to practice in Florida in 1952 and since had practiced in this state as a specialist in neurology and psychiatry, having acted as court appointed physician on occasions in Dade and Broward Counties; and Dr. McIntyre professed knowledge of the standard and procedure for an operation of the kind performed in this instance, through study thereof and observation including the witnessing of one performed a week previously.

"The fact that Dr. McIntyre had not performed such an operation himself could have a bearing on the weight and credibility given to his testimony, but did not render him incompetent under the law to express an opinion as an expert in a case of this character in view of his medical training and

professed knowledge of the standard and procedure for such an operation through study and observation."

*Harris v. Smith,* 372 F. 2d 806 (8th Cir. 1967) in reversing the decision of the trial judge who had sustained an objection to use of a proffered medical witness, the Court said at 814-15:

" . . . a careful reading of the record compels the conclusion that when Dr. Harris' testimony was offered it was not excluded because there was a failure to show that he had *sufficient experience* with the treatment of compound fractures, as is contended by the appellee but, rather, *his testimony was excluded because, although he was a medical doctor, he was not an orthopedic specialist.*

'*I am going to sustain the objection on the ground that this doctor has already testified that he is not in the orthopedic field, and he may not express his opinion on the field.*' (Emphasis supplied.)

"In an action of this gravity, *we believe appellant was entitled to place into evidence the testimony of all properly qualified expert witnesses and it constituted prejudicial error for the trial court to exclude the opinion testimony of Dr. Harris.* The weight to be afforded this testimony was, of course, within the discretion of the jury." (Emphasis in original and emphasis added.)

## The Decision

We are persuaded that the better view is that a medical witness should be permitted to testify in a malpractice action if it is shown: (a) that he knows the standard of required care fixed by *Shilkret, supra;* and (b) that based upon his professional knowledge, training and experience he is familiar with the techniques claimed to have been negligently performed.

We conclude that adoption of such a course accords with the great weight of authority. More, such a view accords with decisions of the Court of Appeals as laid down in cases concerned with issues of causation of illness or injury.

In *Wolfinger v. Frey*, 223 Md. 184, 162 A. 2d 745 (1960), it was said at 189-90 [748]:

"[The] contention was that because Dr. Brings was a general practitioner and not a specialist, he was not qualified to testify at all as an expert on the cause of Mrs. Frey's illness. Because of the importance in this case of Dr. Bring's testimony, we may observe that we see no validity to a contention that unless he were a specialist in the medical field involved he could not testify to his opinion, basing it upon a case history and his examination of the injured person.[2] "

---

"**2.** A general practitioner who was not a specialist was held qualified to testify as a medical expert in Annapolis Gas & Electric Light Co. v. Fredericks, 109 Md. 595, 72 A. 534 (injury due to contact with live electric wire); and in Armour & Co. v. Leasure, 177 Md. 393, 9 A. 2d 572 (food poisoning case; testimony re kind and condition of food likely to harbor germs of particular disease). Cf. United Rys. & Electric Co. v. Corbin, 109 Md. 442, 450, 72 A. 606, where one doctor admitted that because of lack of familiarity with the effects of electric shock, he could not tell whether the patient's condition was due to such shock or to fright, and his testimony was held inadmissible. In a number of cases the testimony of a general practitioner (frequently an attending physician) has been held admissible on questions of mental capacity or condition, though the witness was not a specialist in such matters: Crockett v. Davis, 81 Md. 134, 31 A. 710; Jones v. Collins, 94 Md. 403, 413, 51 A. 398 (30 years' acquaintance, prescribed only twice); United Rys. & Electric Co. v. Corbin, supra, 109 Md. at page 453, 72 A. at page 609; Mitchell v. Slye, 137 Md. 89, 102, 111 A. 814; Donnelly v. Donnelly, 156 Md. 81, 143 A. 648; Love v. Love, 158 Md. 481, 148 A. 814; Johnston v. Schmidt, 158 Md. 555, 149 A. 283; Davidove v. Duvall, 160 Md. 345, 153 A. 417; Doyle v. Rody, 180 Md. 471, 25 A. 2d 457; Marshall v. Sellers, 188 Md. 508, 53 A. 2d 5 (sufficient opportunity to observe is required). See also McCormick, Evidence, § 13, p. 29; 20 Am. Jur., Evidence, §§ 785, 865. Usually the degree of expertness required is left to the discretion of the trial court. General Automobile Owners Ass'n. Inc. v. State, Use of Penn., 154 Md. 204, 212, 140 A. 48; Baltimore C. & A. Ry. Co. v. Moon, 118 Md. 380, 392, 84 A. 536; 20 Am. Jur., Evidence, § 786.

"This note makes no effort to catalogue the cases in which opinion testimony by non-specialist medical experts has been involved, but the qualifications of the witness have not been challenged or commented upon."

*See also: Raitt v. Johns Hopkins Hospital,* 22 Md. App. 196, 203, 322 A. 2d 548, 553 (1974) (reversed on other grounds). *Raitt v. Johns Hopkins Hospital,* 274 Md. 489, 336 A. 2d 90 (1975), itself a malpractice case, where the Court of Appeals explicitly approved the same test for the qualification of medical witnesses as that earlier applied to other kinds of expert witnesses, saying at 500-01 [96]:

> "On the subject of an expert witness's qualifications, we said in *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 298-99, 29 A. 2d 653 (1943):
>
> > ' ... It is a familiar rule of evidence that a witness, in order to qualify as an expert, should have such special knowledge of the subject on which he is to testify that he can give the jury assistance in solving a problem for which their equipment of average knowledge is inadequate. It is sufficient if the court is satisfied that the expert has in some way gained such experience in the matter as would entitle his evidence to credit. ... A witness is qualified to testify as an expert when he exhibits such a degree of knowledge as to make it appear that his opinion is of some value, whether such knowledge has been gained from observation or experience, standard books, ... or any other reliable sources. ...' "

Applying the above test to the subject case we conclude that the *voir dire* examination clearly qualified the proffered witness to testify upon the medical issues involved in the litigation. Under such circumstances the rejection of the proffered witness was an abuse of discretion and constituted reversible error.

*Judgments reversed.*
*Case remanded for new trial.*
*Appellee to pay costs.*